UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF MICHIGAN

IN RE: CHRISTINE SKANDIS
           Debtor
_____/

Chapter 13 Case No. 19-05319-jtg
Hon. John T. Gregg
Case Filed: 12/26/2019

## OBJECTION TO CLAIM

### NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 30 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at [**insert address**] and serve a copy on the movant's attorney, [**name and address**], and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

Debtor, Christine Skandis, Pro Se, objects to the proof of claim filed in this case by Matthew S. DePerno, DePerno Law Office and in states:

1. This case was commenced by the filing of a bankruptcy petition on December 26, 2019.

2. Matthew S. DePerno, DePerno Law Office (hereinafter "Creditor") filed a purported proof of claim (**Claim No. 8.2**) in the amount of **$33,826.28** for **alleged legal fees**.

3. Debtor objects to Claim No. **8.2, please see attached for basis for objection.**

**WHEREFORE**, the Debtor(s) respectfully request(s) that the Court: (1) Sustain the Debtor(s) objection to the Creditor's proof of claim; (2) Disallow the claim as a legally unenforceable debt; and (3) Grant any other such relief as the Court determines just and proper, including attorneys' fees for bringing this objection.

Dated: April 20, 2020

Christine Skandis, Debtor, Pro Se
312 Hoffman St.
Saugatuck, MI 49453

---

*All references to "Debtor" include and refer to both debtors in a case filed jointly by two individuals.

## PROOF OF SERVICE

A true and correct copy of the foregoing has been sent by either electronic transmission or U.S. Mail on **April 20, 2020** to: Chapter 13 Trustee, US Trustee and Creditor.

*[signature]*

Christine Skandis, Debtor, Pro Se
312 Hoffman St.
Saugatuck, MI 49453

FILED
2020 MAY -4 PM 12:02
MICHELLE M. WILSON, CLERK
U.S. BANKRUPTCY COURT
WESTERN DIST OF MICHIGAN



## DEPERNO LAW OFFICE, PLLC

951 W. MILHAM AVENUE
PO BOX 1585
PORTAGE, MI 49081

PHONE # (269) 321-5064    FAX # (269) 353-2726

MATTHEW@DEPERNOLAW.COM

WWW.DEPERNOLAW.COM

**ACCOUNT STATEMENT**

To:
Ms. Christine Skandis
312 Hoffman Street
Saugatuck, MI 49453

| Date | |
|---|---|
| 02/20/2020 | |

| | Amount Due | Amount Enc. |
|---|---|---|
| | 33,826.28 | |

| Date | Invoice Number | Invoice Amount | Payment Number | Payment Amount | Interest 5.00% | Balance |
|---|---|---|---|---|---|---|
| 08/30/2018 | | | cash | 500.00 | | (500.00) |
| 09/10/2018 | | | cash | 500.00 | | (1,000.00) |
| 09/22/2018 | 3455 | 5,302.36 | | | | 4,302.36 |
| 10/19/2018 | 3516 | 310.56 | | | 15.91 | 4,628.83 |
| 02/20/2019 | | | cash | 500.00 | 78.63 | 4,207.46 |
| 02/25/2019 | | | cash | 500.00 | 2.88 | 3,710.34 |
| 02/28/2019 | 3678 | 5,655.20 | | | 1.52 | 9,367.07 |
| 04/10/2019 | 3724 | 2,640.00 | | | 52.61 | 12,059.68 |
| 07/15/2019 | 3818 | 8,589.22 | | | 158.59 | 20,807.49 |
| 07/16/2019 | | | check | 1,000.00 | 2.85 | 19,810.34 |
| 07/30/2019 | 3848 | 4,550.06 | | | 37.99 | 24,398.39 |
| 08/15/2019 | 3851 | 4,712.40 | | | 53.48 | 29,164.27 |
| 08/29/2019 | 3869 | 3,814.16 | | | 55.93 | 33,034.36 |
| 02/20/2020 | | | | | 791.92 | 33,826.28 |
| **TOTAL:** | | | | | 1,252.32 | 33,826.28 |
| **BALANCE DUE:** | | | | | | 33,826.28 |

---

**Deperno's fabricated false claim/invoices includes the following false representations to the court:**

1. Mr. Deperno lists alleged invoices numbers in his fabricated "account statement." I am only learning about this because he uploaded this to the court and only seeing it because my attorney downloaded it and gave me a copy on March 20, 2020. I have never seen these before and have never received a single copy of his alleged invoices in the mail or via email.

2. I did not retain Mr. Deperno for services until Feb 2019. However, Mr. Deperno has fabricated bills/invoices for alleged services in 2018. If these invoices did indeed exist, the "agreements" I was coerced into signing would have reflected this alleged debts.

3. I never gave Mr. Deperno $500 cash on 8/30/2018 or $500 cash 9/10/2018.

4. In fall of 2018, I only met Mr. Deperno because I attended an interview with another person that was interviewing Mr. Deperno but never hired him.

5. Mr. Deperno failed to credit payment of $1000 on 2/19/2020, I believe, check number 106. This is the first time I retained him for services.

6. Mr. Deperno failed to credit payment of $3000 he received in April 2019.

7. Mr. Deperno failed to credit payment of $500 paid 7/29/2019, check #1061.

8. Mr. Deperno did not credit collateral he held to satisfied demand of $5000 collateral he received June 2019.

9. Mr. Deperno did not credit the collateral he took under threat and coercion from my home July 2019.

10. Mr. Deperno billed me for numerous hours he spent in effort to get funds from me.

11. Mr. Deperno billed for events that never took place.

**POLICE REPORT**
**MATTHEW SCOTT DEPERNO (P52622)**
**Committed Burglary-Entering Without Permission**

Mr. Deperno refused to cooperate with Investigating Officer without an attorney for reasons it would incriminate him. Police Officer called Mr. Deperno's attorney however he refused to return the Police Officer's calls. This is still an open and pending investigation against Mr. Deperno for Committed Burglary-Entering Without Permission. The Police Officer has strongly urged me to obtain a Personal Protection Order (PPO) against Mr. Deperno.

PPO against Mr. Deperno by recommendation of Police Officer Aday is in process.

## Incident/Investigation Report

Agency: KDPS    Case Number: 19-016667    Date: 12/30/2019 15:04:33

### Incident Information

| Date/Time Reported | Date/Time Occurred | Date/Time Found | Officer |
|---|---|---|---|
| 10/02/2019 10:00 | | | (14545) ADAY, TREVOR |

**Incident Location**: 530 W South St, Kalamazoo, MI 49007

### Charges

| | Charge Type | Description | Statute | UCR | |
|---|---|---|---|---|---|
| 1 | City | BURGLARY-ENTERING WITHOUT PERMISSION | 22003 | 90Z | ☐ Att ☑ Com |

| Alcohol, Drugs or Computers Used | Location Type | Premises Entered | Forced Entry | Weapons |
|---|---|---|---|---|
| ☐ Alcohol ☐ Drugs ☐ Computers | GROCERY / SUPERMARKET | | ☐ Yes ☑ No | 1. 2. 3. |

| Entry | Exit | Criminal Activity | |
|---|---|---|---|

| Bias Motivation | Bias Target | Bias Circumstances | Hate Group |
|---|---|---|---|

### Victims

| Seq. # | Type | Injuries | Residency Status | Ethnicity |
|---|---|---|---|---|
| 1 | INDIVIDUAL | None | Unknown | |

**Name(Last, First, M)**: SKANDIS, CHRISTINE JOY    Race: W    Sex: F    DOB: [redacted]    Age: [redacted]

**Address**: 530 W SOUTH, KALAMAZOO, MI 49007    **Home Phone**: (269) 998-9300

**Employer Name/Address**: [redacted]    **Business Phone**:

**Victim of Crimes**: 1

# Incident/Investigation Report

Agency: KDPS        Case Number: 19-016667        Date: 12/30/2019 15:04:33

## Offenders

| Seq. # | Type | Name(Last, First, M) |
|---|---|---|
| 1 | INDIVIDUAL | DEPERNO, MATTHEW SCOTT |

| AKA | Race | Sex | DOB | Age | Height | Weight |
|---|---|---|---|---|---|---|
|  | W | M |  | 50 |  |  |

| Address | Home Phone |
|---|---|
| , KALAMAZOO, MI 49009 |  |

| Employer Name/Address | Business Phone |
|---|---|
| / |  |

Scars, Marks, Tatoos or other distinguishing features

Physical Characteristics

**Suspect Details**

## Related Name Relationships

| SKANDIS, CHRISTINE JOY | is | OTHERWISE KNOWN | to | DEPERNO, MATTHEW SCOTT |

Report: r_lw1nl.frx        Printed by: (14289) FUNK, CARRIE   at 12/30/2019 15:04        Page 2 of 4

## Incident/Investigation Report

Agency: KDPS        Case Number: 19-016667        Date: 12/30/2019 15:04:33

### Notes/Narratives

#### NARRATIVE

**PROBABLE CAUSE / SUMMARY:**
On Wednesday, October 2nd 2019 at approximately 1000 hours, PSO Aday was dispatched to 530 W South St, in the City of Kalamazoo, County of Kalamazoo, and State of Michigan for a late report of an illegal entry. The reporting party/victim, Christine Skandis believes her former attorney, Matthew Deperno entered her home on or about September 21st, 2019 and placed a set of legal documents on her kitchen countertop without her permission. No witnesses were advised and no force was believed to be used.

**CHARGING REQUEST:**
The victim Christine Skandis desires prosecution for Illegal Entry.

**DISPATCH:**
Kalamazoo Consolidated dispatched advised the following information.

[10/2/2019 10:01:22 AM DANET\KPRYSON] LATE REPORT
[10/2/2019 10:01:29 AM DANET\KPRYSON] NO FORCE ENTRY
[10/2/2019 10:01:38 AM DANET\KPRYSON] UNK WHO COULD HAVE DONE
[10/2/2019 10:02:05 AM DANET\KPRYSON] UNK IF THEY TOOK ANYTHING -- HAVE PAPERS ON THE COUNTER WITH THE PERSONS NAME OF WHO COULD HAVE DONE IT **
[10/2/2019 10:02:36 AM DANET\KPRYSON] WILL BE HOME UNIL 1130

**VICTIM INTERVIEW (CHRISTINE SKANDIS):**
Skandis was verbally identified and later confirmed with a photo in I/Leads.

Her contact information was updated in I/Leads.

Skandis said that she owns 530 W South St, however she resides in Saugatuck, MI. Skandis said that on September 22nd, 2019 she had found an envelope on her kitchen countertop at 530 W South St. She said that she opened the enveloped and discovered it to be a set of legal documents from her attorney, Matthew Deperno. Skandis believes that her former attorney, Matthew Deperno entered her home without her permission or knowledge and placed the documents on her countertop. Skandis was asked if any force was used to enter her home. She said that she believed the side door on the east side of the residence may have been left unsecured at that time. Skandis was asked for any possible surveillance cameras or witnesses. None were provided. Skandis was asked if anything was missing or broken. Skandis said no, however she did say on July 17th, 2019 Matthew Deperno collected several pieces of property with her permission to avoid collections from obtaining her property. Skandis said she has yet to get her property back and was interested in listing them as stolen. Skandis was referred to the civil courts in pursuant to her property.

Skandis was asked if she had confronted her attorney about the found paperwork reference her findings. Skandis said that she did not. Skandis was asked why she waited so long to make a criminal report. Skandis said that she called dispatch the day of the complaint; however she said that the police were busy with a large accident on the highway. Additionally, she said that she did not know which police agency to contact. Skandis was asked if Deperno ever had a set of her house keys. Skandis said that he did for two separate occasions which she provided to him. She said that she always got the key back but was unsure if he had made a copy.

Skandis also wanted to list her Jaguar that was previously parked at 530 W South St to be stolen. Please refer to case KDPS case number 19-016669 for additional information. (The suspect is unrelated to this case).

# Incident/Investigation Report

Agency: KDPS   Case Number: 19-016667   Date: 12/30/2019 15:04:33

## Notes/Narratives

EVIDENCE:
N/A

ATTACHMENT:
The legal documents that were found by Skandis were scanned into the I/Leads attachment section.

SUSPECT INTERVIEW (MATTHEW DEPERNO):
Matthew Deperno was successfully contact via TX.

Deperno referred me to his legal attorney, Robert Baker (269-686-9448) to schedule a meeting in reference to this case.

No interview was conducted.

*I did attempt to get in touch with Robert Baker.

ADDITIONAL:
-Skandis provided me an additional case number issued by Van Buren County (16622-19) reference her home being illegally entered in Saugatuck, MI. Skandis believes Deperno was responsible for the incident as well.

BODY CAMERA:
My department issued body camera was active during the investigation.

This concludes my investigation.

Respectfully Submitted,
PSO Trevor Aday #14545
October 2nd, 2019 @ 1330 hours

---

CONTINUATION

[EMPTY]

==Deperno COA history of excessive billing + assault battery + legal malpractice==

From: **Christine Skandis** <skandis@umich.edu>
Date: Fri, ==Mar 13, 2020== at 11:11 AM
Subject: COA - Deperno - history of excessive billing
To: ==John Potter== <jpotter@twoheylaw.com>

==Moffits V Matthew S Deperno==, LC No. ==2015-000175-CZ== (Kalamazoo Circuit Court)
Matthew S Deperno V Albert W Laaksonen II, COA ==328739==

==Court of Appeals== final court opinion stating,

> "The complaint included allegations of assault and battery, intentional infliction of emotional distress, and malpractice, and it is clear to us that those allegations were obviously at issue in that case. While the Moffits may have elected not to further pursue those claims in hopes of facilitating settlement, plaintiffs' position that they were irrelevant to that case has no merit. Indeed, even if we assume that the Moffits' lawsuit against DePerno was limited solely to a fee dispute, the fact that ==DePerno allegedly assaulted and battered the Moffits, intentionally inflicted emotional distress on the Moffits, and committed malpractice== in representing the Moffits certainly related to whether he was entitled to the $137,000 in attorney fees that he sought."

> "According to the Moffits' complaint, ==DePerno was retained "to resolve a tax debt to the IRS of approximately $36,000." DePerno apparently sought $137,779.38==, an amount greater than the $108,000 settlement reached between the Moffits and the insurance company. After the Moffits objected to the $137,000 amount, DePerno commenced a foreclosure action against the Moffits."

> In this case, plaintiffs take issue with defendants' inclusion of a document entitled "Interoffice Memorandum" with their motion for summary disposition. This memorandum included discussions centering on ==DePerno's timekeeping issues== with another law office. These issues included ==″time being entered without explanation,″ ″billable hours being 'padded,'″ ″excessive″== write-offs, and ==manipulations "of the timekeeping/bill system to maintain . . . quota hours on accounts that may not render payment."==

> "==The complaint included allegations of assault and battery, intentional infliction of emotional distress, and malpractice, and it is clear to us [COA] that those allegations were obviously at issue in that case.== While the Moffits may have elected not to further pursue those claims in hopes of facilitating settlement, plaintiffs' position that they were irrelevant to that case has no merit. Indeed, even if we assume that the Moffits' lawsuit against DePerno was limited solely to a fee dispute, the fact that ==DePerno allegedly assaulted and battered the Moffits, intentionally inflicted emotional distress on the Moffits, and committed malpractice in representing the Moffits certainly related to whether he was entitled to the $137,000 in attorney fees that he sought.=="

From: **Christine Skandis** <skandis@umich.edu>
Date: Thu, Mar 12, 2020 at 12:14 PM
Subject: Re: FW: Skandis
To: John Potter <jpotter@twoheylaw.com>

Hi John,

Thank you for your email. I gave you a call shortly ago to discuss this email as well as the email from the Trustee yesterday. Thank you for calling me back at your convenience.

Mr. DePerno's claim is disputed. I have yet to receive a bill or statement of services from Mr. DePerno. In fact, his Engagement Agreement I was coerced into signing (Service and Billing Memorandum page 1, second to last paragraph) says he can refuse to give one without a reason.

When I met with another attorney they stated his efforts should not have cost over $1000. Mr. DePerno was paid $7500 plus coerced me into encumbering everything I own.

He filed an appeal on April 22, 2019 (Case number 348765). He had me paying fees myself and delivering documents. The appeal was dismissed May 21, 2019 as defective for lack of jurisdiction.

On June 5, 2019 Mr. DePerno again filed a claim of appeal (Case number 349218). Mr. DePerno failed to file the brief timely and instead requested an extension of time to file the same. He was granted an extension to August 28, 2019.

On or about June 29, 2019 Mr. DePermo emailed me an engagement Agreement, a Note for $12,000, a Security Agreement, a Guarantee and a mortgage, demanding I execute the documents or he would not file the necessary brief in the Court of Appeals. I felt forced to sign the documents and get the guarantee.

The brief he promised was never filed.

Instead, on August 21, 2019 Mr. DePerno committed a breaking and entering of my residence in Kalamazoo and in Saugatuck, entering my homes without my knowledge or permission, and in each case on my table there was deposited the motion and notice of hearing to withdraw scheduled for August 23, 2019. DePerno falsely represented that I had been personally served. He also falsely claimed in his motion that I asked him to do something unethical. My only request was that he process the appeal.

I was forced to file my own brief. I also had to defend a motion to dismiss my appeal because Mr. DePerno not only failed to file his brief, he falsely stated with the claim of appeal that all transcripts for hearings on the orders appealed from had been completed and filed with the trial court. Only three of the five had been filed. DePerno also had failed to serve a single transcript on opposing counsel as required by MCR 7.210(B)(1) and 7.210(F). He also failed to comply with MCR 7.212(C)(7).

In summary I feel Mr. DePerno has abused me, lied to me, coerced me into encumbering everything I own even when my property is being threatened by the collection efforts from the lawsuit he was pretending to appeal from, and performed unprofessionally, filing a defective appeal, and then filing a second appeal in a sloppy and incomplete manner, never filing the brief he insisted I pay for in advance, and then withdrawing while lying about the reason. It is in part Mr. DePerno's

Thank you John.

Christine

From: **Christine Skandis** <skandis@umich.edu>
Date: Thu, Mar 26, 2020 at 2:04 AM
Subject: Deperno - False claim/invoices + Violated my rights to notice, contest, verify debt
To: John Potter <jpotter@twoheylaw.com>

Hi John,
Below are details of Deperno's fabricated false claim/invoices. I never received a single invoice from him either via US mail or email, violating my rights to notice, contest and verify (alleged) debt (pursuant FDCPA). I am attaching the Grievance which has more details of his violations.
Thank you John.
Christine

Deperno's fabricated false claim/invoices includes the following false representations to the court:

1. Mr. Deperno lists alleged invoices numbers in his fabricated "account statement." I am only learning about this because he uploaded this to the court and only seeing it because my attorney downloaded it and gave me a copy on March 20, 2020. I have never seen these before and have never received a single copy of his alleged invoices in the mail or via email.

2. I did not retain Mr. Deperno for services until Feb 2019. However, Mr. Deperno has fabricated bills/invoices for alleged services in 2018. If these invoices did indeed exist, the "agreements" I was coerced into signing would have reflected this alleged debts.

3. I never gave Mr. Deperno $500 cash on 8/30/2018 or $500 cash 9/10/2018.

4. In fall of 2018, I only met Mr. Deperno because I attended an interview with another person that was interviewing Mr. Deperno but never hired him.

5. Mr. Deperno failed to credit payment of $1000 on 2/19/2020, I believe, check number 106. This is the first time I retained him for services.

6. Mr. Deperno failed to credit payment of $3000 he received in April 2019.

7. Mr. Deperno failed to credit payment of $500 paid 7/29/2019, check #1061.

8. Mr. Deperno did not credit the satisfied demand of $5000 collateral he received in June 2019.

9. Mr. Deperno did not credit the collateral he took under threat and coercion from my home July 2019.

10. Mr. Deperno billed me for numerous hours while spending great effort to get funds from me.

11. Mr. Deperno billed for events that never took place.

I was forced to file my own brief. I also had to defend a motion to dismiss my appeal because Mr. DePerno not only failed to file his brief, he falsely stated with the claim of appeal that all transcripts for hearings on the orders appealed from had been completed and filed with the trial court. Only three of the five had been filed. DePerno also had failed to serve a single transcript on opposing counsel as required by MCR 7.210(B)(1) and 7.210(F). He also failed to comply with MCR 7.212(C)(7).
Now 6 months after he withdrew from the appeal, Mr. DePerno suddenly fabricates a claim of an additional $33,826.28 owed to him. I only learned of this alleged debt through his filing of a claim in my bankruptcy. I have never received or seen any of the invoices that he alleged in his fabricated claim until my attorney provided me a copy on March 20, 2020.

The Fair Debt Collection Practices Act (FDCPA) and federal laws provide that an individual has a right to notice of a debt; right to contest a debt; and right to verify a debt. Mr. Deperno has violated these laws. I have never received any of his alleged invoices – either by US Mail or email - for me to have the opportunity to dispute.

In fact, his Engagement Agreement I was coerced into signing (Service and Billing Memorandum page 1, second to last paragraph) says **he can refuse to give one without a reason.**

Mr. Deperno has falsely represented to the bankruptcy court that I am "a chronic and serial bankruptcy filer" when I have never filed a bankruptcy before in my life. I believe his actions are clear and intentional acts to continue to harm me. Mr. Deperno represented to me that this was an easy appeal, had he acted with reasonable diligence and promptness I would not be in a bankrupt position now.

In summary I feel Mr. DePerno has abused me, lied to me, coerced me into incumbering everything I own even when my property is being threatened by the collection efforts from the law suit he was pretending to appeal from, and performed unprofessionally, filing a defective appeal, and then filing a second appeal in a sloppy and incomplete manner, never filing the brief he insisted I pay for in advance, and then withdrawing while lying about the reason.

I believe Mr. DePerno violated the following provisions of the Michigan Code of Professional Conduct:

**MRPC: 1.1(b)** handling a legal matter without preparation adequate in the circumstances. Mr. DePerno failed to ascertain that all orders had been prepared and signed in the Circuit Court; failed to order and have prepared all necessary transcripts, and failed to serve copies on opposing counsel, and failed to prepare and file a brief. He filed an appeal which failed for lack of jurisdiction.

**MRPC: 1.1(c)** neglected a legal matter entrusted to him. While spending great effort to protect his ability to get funds from me, Mr. DePerno failed to perfect the record, serve the opposition, and ever prepare and file a brief.

**MRPC 1.3** failed to act with reasonable diligence and promptness in representing a client. Mr. DePerno, after being retained five months, never did complete transcript preparation or serve the opposition or file a brief.

**MRPC 1.5** entered into an agreement for, and collected, and is still attempting to collect a clearly excessive fee. Mr. DePerno collected $4,000 from me, and then insisted I pay $5,000 in June before he would file a brief. I gave his agent property that was to satisfy the demand. He then insisted I sign the Fee Agreement, $12,000 note, security agreement, and mortgage. So he is charging me $23,000 plus the value of more property he took in July, for a failed appeal, and a second appeal that was improperly perfected, with no brief filed. On top of this, now 6 months after he withdrew from the appeal, Mr. DePerno suddenly fabricates a claim of an additional $33,826.28 owed to him of which I am only learning about through a claim he filed in my bankruptcy. Mr. Deperno's fabricated alleged "Account Statement" for $33,826.28 fails to provide credits for payments made to him, provides invoicing dates in August, September, October 2018 before I ever retained him to represent in February 2019, indicates cash payments
when no cash payments were made and violates my rights under the Fair Debt Collection Practices Act (FDCPA).

**MRPC 1.8(j)** obtained a proprietary interest in the subject matter of the litigation. I was trying to protect my property and prevent it being taken to satisfy a wrongful judgment. Mr. DePerno coerced me into signing a security agreement and mortgage incumbering my property, and suggested a way to hide it from Appellees.

**MRPC 3.3(a)(1)** making a false statement of fact to a tribunal. Mr. DePerno falsely represented to the Court of Appeals that all transcripts had been filed with the trial court; that he personally served me with his motion to withdraw; and that I asked him to do something unethical.