UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE:<br>CHRISTINE SKANDIS<br><br>Debtor<br><br>_____/ | Case No.:   19-05319-jtg<br>Date Filed:   12/26/2019<br>Chapter 13<br>Honorable John T. Gregg |

## DePERNO LAW OFFICE, PLLC'S CONCURRENCE WITH THE TRUSTEE'S MOTION TO FOR SUMMARY DISPOSITION

NOW COMES creditor DePerno Law Office, PLLC, by Matthew S. DePerno and enters its concurrence with the *Trustee's Motion for Summary Disposition* [Dkt. No. 143] for the following reasons:

**A.   Facts**

On December 26, 2019, Debtor filed a voluntary petition for bankruptcy [Dkt. No. 1]. In that petition, Debtor intentionally lied and concealed assets. Since that time, her strategy has been to burn through attorneys, accuse them of malpractice, continue to conceal assets (by failing to amend her schedules), misrepresent facts, delay the proceedings and discovery with obstinate answers, and feign confusion and lack of experience. In Debtor's bankruptcy petition and schedules [Dkt. No. 18], the following are knowingly false statements made under penalty of perjury:

1. Debtor listed Matthew S. DePerno / DePerno Law Office as a "nonpriority unsecured claim" [Dkt. No. 1, page 14]. She knew this to be false because she signed a Promissory Note [Dkt. No. 40-2], Security Agreement [Dkt. No. 40-4], and Mortgage [Dkt. No. 40-5] on June 29, 2019. She also knew that her paramour, co-conspirator, and serial bankruptcy filer Larry Fuller signed a

Guaranty [Dkt. No. 40-3] that same day. See <u>Exhibit 1</u>. She knew she signed the documents.[1] She knew her statement on the voluntary petition was false. Yet, as of today, she has not corrected her false statement.

2. The signature page of the voluntary petition states, "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and they are true and correct." Yet at the 341 hearing on May 4, 2020, Debtor claimed that she never read the petition and didn't know what she was signing. She double-down on this statement in *Debtor's Response and Objection to Trustees' Motion for Summary Judgment* [Dkt. No. 162, page 4, ¶ 25] wherein she claims that on January 8, 2020 she "signed blank pages of these documents" (referencing her schedules, statement of financial affairs, and Chapter 13 plan).

3. In her schedules [Dkt. No. 18], Debtor listed the following:

| Asset | Value |
|---|---|
| Schedule A/B | |
| Personal Household Goods and Furnishing | $5,000.00 |
| Clothing | $350.00 |
| ARTesian Glacier Water, LLC | $1.00 |
| Puttin' On The Ritz (50%) | unknown |
| Skandis Fine Wines, LLC | unknown |
| **TOTAL** | **???** |

Otherwise, she lists no tangible personal assets, and lists no assets of these companies. However, the undersigned has revealed that Debtor failed to list (and in fact fraudulently concealed) the following assets:

- three (3) royal wedding beds [Dkt. No. 40-9]
- furniture [Dkt. No. 40-10]

---

[1] Debtor is now attempting to make the ill-conceived and ill-advised argument that she signed under "duress;" but the emails don't speak of duress. Instead, the emails show that she signed willfully and knowingly.

2

- 9x9 carved jade ship [Dkt. No. 40-11]
- art pieces [Dkt. No. 40-12]
- other Chinese collectibles [Dkt. No. 40-13]
- fixtures [Dkt. No. 40-14]
- clothing [Dkt. No. 40-15]
- wine [Dkt. No. 40-16]
- 1946 Jaguar Saloon [Dkt. No. 40-17]
- bronze statues [Dkt. No. 40-20]
- Dante Design Associates, Inc. / Patent [Dkt. No. 40-21]

4. At the 341 hearing on May 4, 2020, Debtor claimed that these assets are owned by either Puttin' On The Ritz or Skandis Fine Wines. Yet she admitted that she has found no bill of sale. Perhaps more disturbing is the fact that Debtor signed a Security Agreement [Dkt. No. 40-4] on June 29, 2020 in which she personally warranted and represented that she was the owner of the assets. See Dkt. No. 40-4, page 3:

> 5. **Warranties, Representations and Agreements.** Debtor warrants and represents to, and agrees with, Secured Party as follows:
>
>    a. the Debtor has good, marketable and indefeasible title to the Collateral, has not made any prior sale, pledge, encumbrance, assignment or other disposition of any of the Collateral, and the Collateral is free from all encumbrances and rights of setoff of any kind except the lien in favor of the Secured Party created by this Agreement;

5. The "Collateral" itself is defined in paragraph 1:

> 1. **Definitions.**
>
>    a. "Collateral" shall include the Debtor's (1) tangible personal property, fixtures, leasehold improvements, trade fixtures, and equipment, and any other personal property described on Exhibit "A" attached hereto and made a part hereof (collectively the "Personal Property"); (2) all general intangibles relating to or arising from the Personal Property; (3) all cash and non-cash proceeds (including insurance proceeds) of the Personal Property; (4) all products thereof and all additions and accessions thereto, substitutions therefor and replacements thereof; and (5) all records and data relating to any of the Personal Property described in this section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

3

6. The referenced "Exhibit A" to the Security Agreement lists the following items:

**EXHIBIT A**

| Item | Location |
|---|---|
| Approx. 25 art pieces (including jade) | Gretchen Molotky's possession |
| (3) antique Chinese royal wedding beds | 530 West South Street, Kalamazoo, MI 49007 |
| (5) antique Chinese armoires | 530 West South Street, Kalamazoo, MI 49007 |
| (1) 9 feet x 9 feet carved jade ship | 530 West South Street, Kalamazoo, MI 49007 |
| (2) lacquer Chinese themed cabinets | 530 West South Street, Kalamazoo, MI 49007 |
| All other art pieces | 530 West South Street, Kalamazoo, MI 49007 and 312 Hoffman Street, Saugatuck, MI 49453 |
| All other jade pieces | 530 West South Street, Kalamazoo, MI 49007 and 312 Hoffman Street, Saugatuck, MI 49453 |
| All other Chinese collectibles and antiques | 530 West South Street, Kalamazoo, MI 49007 and 312 Hoffman Street, Saugatuck, MI 49453 |
| 50 cases, 2005, Barbera | 530 West South Street, Kalamazoo, MI 49007 |
| 11 cases, 1999, Passito | 530 West South Street, Kalamazoo, MI 49007 |
| 30 bottles, 1983, Passito | 530 West South Street, Kalamazoo, MI 49007 |
| 50 cases, 750ml, Nebbiola/Barbera/Fresia/Neretto | 530 West South Street, Kalamazoo, MI 49007 |
| 100 cases, 1.5 L, Nebbiola/Barbera/Fresia/Neretto | 530 West South Street, Kalamazoo, MI 49007 |

Just so we are clear; when Debtor signed the Security Agreement she warranted that she owned these particular assets; but now she claims she doesn't, and she has no bill of sale.

7. The Court should pay particular attention to the email Debtor sent to the undersigned on July 11, 2019 [Dkt. No. 40-8]. This is attached again to this concurrence for quick reference. Exhibit 2. This email contained an attachment tilted "Assert List.docx." The asset list, prepared by Debtor herself and in her own words, lists significant value to these undisclosed assets.

4

8. At the 341 hearing on May 4, 2020, Debtor claimed that she has no recollection of the email. Ex 2. Yet, she has apparently made no effort to search for it in her outgoing emails. She has made no effort to inform herself of the exhibits attached to the motion for relief from stay. She also claimed she was never served with the motion for relief from stay. She claimed that her attorneys have never forwarded the exhibits to her, even after she requested them. However, documents filed in this case tell a different story.

- On February 21, 2020, DePerno Law Office filed a Proof of Service stating that the motion for relief from stay was served on Debtor by US Mail [Dkt. No. 40, page 12].

- On February 28, 2020, Gravis Law PLLC filed a Certificate of Service stating that the motion for relief from stay was served on Debtor by US mail [Dkt. No. 53].

- But perhaps more to the point, the US Post Office records confirm that the motion for relief from stay was mailed to Debtor on February 21, 2020. See Exhibit 3. Debtor is the only person who lives at 312 Hoffman Street, Saugatuck, MI 49543.

- Unfortunately for Debtor, USPS Priority Mail provides a tracking number. Maybe Debtor didn't know this when she falsely claimed she didn't receive the motion. See Tracking No. 9505 5066 2556 0052 1748 67. Exhibit 4. This tells us that the motion was delivered on February 24, 2020.

9. DePerno Law Office filed its motion for relief from stay on February 21, 2020 and proof of claim on February 20, 2020 and amended February 24, 2020. Since that time, Debtor has cycled through two attorneys (accusing both of misfeasance, malfeasance, and nonfeasance), but she has not bothered to amend her petition or her schedules. She is content to allow her petition and schedules stand (under penalty of perjury) as originally filed.

10. On April 20, 2020, Debtor filed a motion for extension and motion to adjourn [Dkt. 146]. That the motion, on its face, appears to be yet another attempt to

delay. Interestingly, Debtor makes the statement that "Debtor wants to pay her creditors" [Dkt. No. 146, page 4, ¶ 25]. Even as late at this evening. Debtor makes the same statement in *Debtor's Response and Objection to Trustees' Motion for Summary Judgment* [Dky. No. 162, page 4, ¶ 25] ("Debtor wants to pay her creditors"). But her actions demonstrate otherwise. In fact, she has done nothing to pay any creditors. Instead, she has concealed assets and played a shell game where asset ownership and locations are moved round and round and only revealed after so many false guesses are made and so much money of creditors is wasted and squandered. This is the very definition of fraud.[2] It costs creditors, the Trustee, and the Court money and time. And it is a game Debtor willingly plays again and again because it costs her nothing. She doesn't pay her attorneys and then accuses them of all types of nefarious deeds in order to stop collection.

11. Indeed, she plays this game with her co-conspirator Larry Fuller. In responses to interrogatories, Debtor stated that the "furniture" detailed in the pictures attached at Dkt. No. 40-10 is owned by Larry Fuller. See <u>Exhibit 5</u> [Interrogatory 4]. She also stated that the "clothing" detailed in the pictures attached at Dkt. No. 40-15 are owned by Larry Fuller. *Id*. [Interrogatory 9]. She also stated that some of the wine detailed in pictures attached at Dkt. No. 40-16 is owned by Larry Fuller. *Id*. [Interrogatory 10].

---

[2] "*Fraud* is deliberately deceiving someone else with the intent of causing damage. This damage need not be physical damage, in fact, it is often financial. There are many different types of fraud, for example bankruptcy fraud, credit card fraud, and healthcare fraud. The precise legal definition of fraud varies by jurisdiction and by the specific fraud offense."
-- https://www.law.cornell.edu/wex/fraud

12. At the 341 meeting on May 4, 2020, Debtor now claims that the wine is owned by Skandis Fine Wine, LLC and other assets are owned by Puttin' On The Ritz, LLC. Every single time she is asked questions about the asset ownership, her story changes.[3]

13. Yet none of those assets are listed on Schedule A/B of the bankruptcy filed by Larry Fuller [Case No. 18-00295-jtg] or filed by Puttin' On The Ritz, LLC. [18-03595-jtg]. Apparently, ownership is claimed on a day-to-day basis depending on which creditor is asking the question. If there has ever been a case that falls squarely in the parameters of 18 U.S.C. §§ 152 and 157 [Bankruptcy fraud] or 18 U.S.C. §§ 1341, 1343, and 1344 [Wire, bank, and mail fraud], it is this case.

**B.    Harassment and Obstruction of justice**

On April 10, 2020, Debtor walked into yet another police department and filed a police report against the undersigned, Matthew S. DePerno. This is now the third criminal report she has filed against the undersigned in an effort to stop collection. Her allegations are nonsensical and over-the-top. Her actions scream of a scorched-earth effort to attack, damage, and discredit the undersigned because he brought to light so much of Debtor's fraud and concealment. Likewise, Debtor's recent filing [Dkt. No. 159] is another in a long line of Debtor's attacks based on slander and misinformation. Her actions are designed to intimidate, harass, and obstruct justice. This is not the first time Debtor has accused a creditor of crimes. It appears to be her go-to defense. Yet Debtor appears to be the only person in these proceedings who has pled guilty to

---

[3] Let us not forget the statement made by Eldean in *Eldean's Concurrence with Trustee's Motion to Compel* [Dkt. No. 117, page 3] ("Once Debtor unlocked the Bangor Premises and the parties entered, it was immediately apparent that Debtor had stockpiled assets at this location that she has not disclosed in this bankruptcy").

7

"false pretenses with the intent to defraud" pursuant to MCL 750.218;[4] wherein she was charged with forging a settlement agreement in a state court lawsuit.[5] It appears she pled to a reduced misdemeanor in Count 2 to avoid Count 1. Also of interesting note that two separate attorneys withdrew from her criminal case.

**C.    Bad Faith**

Debtor's fraudulent actions in this case are on display for everyone to see. She filed a false and misleading petition. She intentionally omitted items from her schedules in order to avoid paying creditors. When caught, she continued to play her ever evolving shell game of hiding assets and fraud. When the undersigned revealed the truth, she attacked with criminal complaints. She blames all of her attorneys. In fact, she despises attorneys. She sets up every attorney relationship as a pretext to claim malpractice. This is on full display in how she tried to set-up attorney Bonnie S. Lent-Davis. The Court need only read the emails attached to Dkt. No. 35 [Exhibits 1-7] to see the set-up as it unfolds. When Debtor's bad faith and misdeeds are revealed, she blames everyone surrounding her. Indeed, Debtor should stop attacking those who brought her lies to light. Instead, she should take actions to correct her fraud. There is no question that Debtor filed this bankruptcy in an inequitable manner with the intent to defraud creditors and hide assets.

**D.    Relief Requested**

For the reasons set forth above, DePerno Law Office requests that this Court grant the Trustee's Motion for Summary Judgment and dismiss Debtor's Chapter 13 case with a 365-day bar to filing any type of bankruptcy petition (frankly, 365-days is too little). DePerno Law Office

---

[4] *People v Christine Skandis*, Kalamazoo County Circuit Court, Case No. 2014-0757-FH
[5] *Skandis Fine Wines, LLC v Theresa Fuller*, Kalamazoo County Circuit Court, Case No. 2011-0493-PD

also requests that this Court grant whatever other relief the Court determines is equitable and just under the circumstances.

                                                          Respectfully submitted

                                                          DePERNO LAW OFFICE, PLLC

Dated: May 4, 2020                              */s/ Matthew S. DePerno*
                                                          Matthew S. DePerno (P52622)
                                                          951 W. Milham Avenue
                                                          PO Box 1595
                                                          Portage, MI 49081
                                                          (269) 321-5064
                                                          matthew@depernolaw.com

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

IN RE:
CHRISTINE SKANDIS

Debtor

Case No.:    19-05319-jtg

Date Filed:    12/26/2019

Chapter 13

Honorable John T. Gregg

## PROOF OF SERVICE

The undersigned certifies that a copy of this Concurrence was served on Debtor who is proceeding *pro se* via electronic mail at Skandis@umich.edu and christinecourt1@gmail.com. This Concurrence was also sent via first class mail to Debtor at 312 Hoffman Street, Saugatuck, MI 49453. This notice was also filed electronically and served on the Trustee and all parties with an interest in this matter.

Dated: May 4, 2020

*/s/ Matthew S. DePerno*
Matthew S. DePerno (P52622)
951 W. Milham Avenue
PO Box 1595
Portage, MI 49081
(269) 321-5064
matthew@depernolaw.com

10