UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

IN RE:

CHRISTINE SKANDIS

Debtor

_____/

Case No.:       19-05319-jtg

Date Filed:     12/26/2019

Chapter 7

Honorable John T. Gregg

### MOTION FOR CONTEMPT AND SANCTIONS AGAINST DEBTOR

NOW COMES DePerno Law Office, PLLC ("DePerno Law"), by Matthew S. DePerno and hereby moves this Honorable Court pursuant to 11 U.S.C. § 105 and the Court's inherent powers, for an order finding Debtor, Christine Skandis ("Debtor") in contempt for her ongoing violations of Federal Rule of Bankruptcy Procedure 4002(a)(1); ongoing failure and refusal to answer questions at the §341 meeting; and refusal to comply with this Court's order [Dkt. No. 203] requiring Debtor to file certain documents by June 18, 2020. DePerno Law also moves for an order under FRBP 2005 for a an order requiring the apprehension of Debtor to bring her before the court to answer questions pursuant to a §341 meeting. As grounds for the relief requested in this motion, DePerno Law relies on prior pleadings and related proceedings and further states as follows:

A.   **Background; Conversion to Chapter 7 and Order**

1.   On May 21, 2020, this Court issued an *Order Converting Case Under Chapter 13 to Case Under Chapter 7* [Dkt. No. 203]. That Order required Debtor to take certain action within twenty-eight (28) days:

> 7.   Within twenty-eight (28) days of the entry of this Order, the Debtor shall file:

      a.    a schedule of all property not listed in the final report and account of the chapter 13 trustee which was acquired after the commencement of the chapter 13 case but before the entry of this Order;

      b.    a schedule of executory contracts entered into or assumed after the commencement of the chapter 13 case but before the entry of this Order;

      c.    a schedule of unpaid debts not listed in the final report and account of the Chapter 13 Trustee which were incurred after the commencement of the chapter 13 case but before the entry of this Order, as required by Fed. R. Bankr. P. 1019(1)(B);

      d.    a statement of intention with respect to retention or surrender of property securing consumer debts, as required by 11 U.S.C. § 521(2)(A) and Fed. R. Bankr. P. 1019(1)(B) and conforming to Official Form 8A.

2.    Debtor has never complied with this Order. On August 26, 2020 at the §341 meeting [Dkt. No. 224], Debtor admitted that she has never complied with this Order.

**B.**    <u>**Section 341 Meeting**</u>

3.    On July 28, 2020, Chapter 7 Trustee Jeff A. Moyer scheduled a §341 meeting for August 12, 2020 at 1:00 PM [Dkt. No. 220].

4.    At that meeting, Debtor stated that she would not answer questions without an attorney. See e.g. *Motion by the United States Trustee to Extend Time to File Nondischargeability Actions, to Object to Discharge and to Delay the Granting of Discharge* [Dkt. No. 228, ¶2]:

      2.    Without adequate explanation, the Debtor appeared 16 minutes past the scheduled time for her most recent telephonic Section 341 Meeting on August 12, 2020. At that time the Debtor requested an adjournment of her Meeting so that she could

2

>obtain counsel to represent her. Therefore, no one has yet examined the Debtor concerning the events that occurred during her Chapter 13 case.

5. On August 12, 2020, Chapter 7 Trustee Jeff A. Moyer re-scheduled the §341 meeting for August 26, 2020 at 1:00 PM [Dkt. No. 224].

6. On Wednesday, August 26, 2020, Debtor appeared at 1:14 PM.

7. Again, she refused to answer any questions. Instead, she requested another adjournment for the following reasons:

   (a) she refused to answer any questions without the assistance of an attorney;

   (b) she stated that she had recently filed a notice to withdraw her Chapter 7 case and the Court had "invited" her to file a new notice with detailed plan to pay creditors within 10 days;

   (c) she stated that she would be filing a plan to pay all creditors "justly"[1] within 10 days;

   (d) if the Trustee does not accept her plan, only then she will try to hire an attorney and only then will she answer questions under oath at a §341 meeting.

8. Debtor repeated this manta over and over. She was clearly reading from a script.

9. Finally, at 1:30 PM, Trustee had enough of her nonsense and asked his first question: "Who are the owners of Dante Design?" Debtor read from her script again. When asked the question again, Debtor refused to answer and went silent.

10. Trustee asked his second question: "Who are the owners of Sunset Holdings?" Debtor read from her script again. When asked the question again, Debtor refused to answer and went silent.

---

[1] Debtor did not define the term "justly," which appears to be her subjective term.

3

11. Trustee asked his third question: "Who are the owners of Skandis Fine Wines?" Debtor read from her script again. When asked the question again, Debtor refused to answer and went silent.

12. Trustee asked his fourth question: "Have you filed your 2019 tax returns?" Debtor refused to answer and went silent. Trustee asked the question several more times; but Debtor refused to speak or acknowledge the question.

13. At approximately 1:40 PM, Trustee Jeff Moyer adjourned the hearing based on Debtor's failure to cooperate and refusal to respond.

14. Throughout the 40 minute hearing, Trustee Jeff Moyer was professional and allowed Debtor to continue to repeat her script. Trustee politely explained the following to Debtor (sometimes more than once):

    (a) The Court's order [Dkt. No. 232] did not invite Debtor to file another notice to voluntarily dismiss.

    (b) A debtor in Chapter 7 is not entitled to simply dismiss the bankruptcy through a notice of dismissal.

    (c) Trustee is required to perform his statutory duties and conduct the §341 meeting and that he would ask her questions.

    (d) Debtor had so far not complied with the requirements set forth in the Court's order converting the case to Chapter 7. Debtor agreed.

    (e) Debtor has had since April 10, 2020 to obtain new counsel. See *Order of Withdrawal of Attorney John A. Potter as Counsel of Record for Debtor Christine Skandis* [Dkt. No. 140].

    (f) Debtor's actions could only be interpreted as an obvious attempt to delay proceedings and refusal to answer questions.

15. Nevertheless, Debtor insisted on repeating her script and refused to answer questions, even going totally silent at the end.

4

C.  **Debtor must be held in contempt and she must be sanctioned**

16. Debtor's concerted defiance of this Court's Order [Dkt. No. 203] and refusal to answer questions at the §341 meeting have no legal justification. Her actions at the §341 meeting were disrespectful to everyone on the telephone call and demonstrated a willingness to engage in gamesmanship and delay tactics that can only be addressed through contempt sanctions because she clearly will not comply with court orders or statutory requirements. Her failure to turn over documents has left valuable estate property exposed to risk and has imposed costs on the estate and creditors to obtain compliance, while increasing the costs to the estate of retrieving and securing property and increasing costs of creditors in exercising and defending their rights.

17. DePerno Law seeks an order of this Court holding Debtor in contempt of Court and imposing sanctions on her for her failure to comply with this Court's Order [Dkt. No. 203] and refusal to answer questions at the §341 meeting.

18. DePerno Law has incurred $1,110.00 in fees resulting from Debtor's noncompliance. Which includes the following:

| | |
|---|---|
| Preparation time prior to §341 meeting: | 1 hour |
| Attending §341 meeting: | 40 minutes |
| Research and preparing this motion: | 2 hours |
| TOTAL HOURS: | 3.7 hours |
| **BILLING RATE: $300.00 per hour:** | **$1,110.00** |

D.  **Section 341 Meeting must be conducted in person**

DePerno Law recognizes the inherent problems caused by COVID-19. However, is are no current stay-at-home order issued by Governor Whitmer that prevents in-person meetings and depositions so long as CDC guidelines are followed. Indeed, DePerno Law has conducted in-person depositions starting in June 2020. In this case, Debtor has intentionally caused problems with the telephonic §341 meetings. She has entered the conference late on both meetings. She

5

remainss silent at times. She refuses to respond. At certain moments we have been unable to determine whether she is still on the line because she refuses to respond to questions. This is a case where everyone would benefit from an in-person §341 meeting. Debtor will no longer be able to conduct herself with such transparent bad faith.

Many people have reacted heroically during the COVID-19 crisis, such as hospital workers and grocery store owners, caring for others at great risk to themselves. But, unfortunately, the crisis seems to have brought out the worst in other people. Specifically, some have taken advantage of the crisis to engage in unfair behaviors they claim was somehow necessary because of the spread of this virus. In the litigation context, their actions threaten to delay or outright deny justice and the courts should step in to ensure that does not happen. Put simply, Debtor is manipulating the COVID-19 crisis to her benefit. Her tactic can be described as "delay, delay, delay." She has delayed providing information and has delayed the §341 process by refusing to answer questions and remaining silent. In the context of a telephone hearing, this is very frustrating and exponentially compounds the problems.

Debtor has argued that COVID-19 has prevented her from performing her duties. How convenient and how utterly opportunistic in the worst sense of the word. Using the COVID-19 crisis as an excuse only allows Debtor to delay, costing everyone time and money. On August 24, 1970, Chief Justice Warren E. Burger recognized the problem arising from delayed justice when he addressed the American Bar Association:

> "A sense of confidence in the courts is essential to maintain the fabric of ordered liberty for a free people and three things could destroy that confidence and do incalculable damage to society: that people come to believe that inefficiency and delay will drain even a just judgment of its value; that people who have long been exploited in the smaller transactions of daily life come to believe that courts cannot vindicate their legal rights from fraud and over-reaching; that people come to believe the law – in the larger sense – cannot fulfill its primary function to

6

>
> protect them and their families in their homes, at their work, and on the public streets."

Debtor's actions at the last §341 meeting were obnoxious and inexcusable. She must be held to account through contempt and sanctions. But she must also be required to answer questions under oath. She has proven that she will not do so on the telephone hearing. She will only continue to manipulate the telephone hearing to her advantage as she has done twice already. Therefore, as a sanction, DePerno Law requests this court order her to appear in-person for the next §341 meeting.

### E. Relief Requested

19.     The actions of Debtor give this Court ample basis to hold Debtor in contempt. Because her failure is willful and continuing, sanctions are appropriate. Recognizing that the imposition of sanctions is within the Court's discretion, among the sanctions requested are the following:

(a)     holding Debtor in contempt for her willful and bad faith actions, and imposing a reasonable punitive sanction to ensure compliance;

(b)     requiring Debtor to comply with the Court's order [Dkt. No. 203];

(c)     requiring Debtor to forthwith answer questions at an in-person §341 meeting which will prevent further manipulation of the process;

(d)     imposition of monetary sanctions for the attorney fees incurred by DePerno Law Office, PLLC, in court and out, for pursuing compliance with the Order and requirements under §341 and Rule 4002(a)(1);

(d)     additional sanctions as this Court deems just and fair for Debtor's willful noncompliance.

7

|  |  |
|---|---|
|  | Respectfully submitted |
|  | DePERNO LAW OFFICE, PLLC |
| Dated: September 3, 2020 | /s/ Matthew S. DePerno<br>Matthew S. DePerno (P52622)<br>951 W. Milham Avenue<br>PO Box 1595<br>Portage, MI 49081<br>(269) 321-5064<br>matthew@depernolaw.com |

## BRIEF IN SUPPORT OF MOTION

A.    **Authority**

The bankruptcy court has "broad authority to exercise its equitable powers to ensure compliance with its own orders." *Fatsis v. Braunstein (In re Fatsis)*, 405 B.R. 1, 7 (B.A.P. 1st Cir. 2009) (citing *Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43 (1st Cir. 2008)). "Section 105(a) confers '[on the bankruptcy court] statutory contempt powers' which 'inherently include the ability to sanction a party.'" 405 B.R. at 7 (citing *Nosek*, 544 F.3d at 43–44).

> The traditional justification for the relative breadth of the contempt power has been necessity: Courts independently must be vested with "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and ... to preserve themselves and their officers from the approach and insults of pollution." Courts thus have embraced an inherent contempt authority, as a power "necessary to the exercise of all others[.]"

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). In addition, "it is firmly established that '[t]he power to punish for contempts is inherent in all courts.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123 (1991). In *Heaney v. Lamento (In re Whiz Kids Dev., LLC)*, 576 B.R. 731 (Bankr. D. Mass. 2017), this Court observed:

> A party alleging civil contempt must establish by clear and convincing evidence that a contemnor violated a court order, *AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001) (citation omitted), and substantial compliance can avert a finding

8

> of contempt. *Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991). "[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous [,]" *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991), and it is sufficient that the court order violated be "specific and definite" and that the offending party had knowledge of the court's order. *Slaiby v. Rassman (In re Slaiby)*, 73 B.R. 442, 444 (Bankr. D. N.H. 1987) (quoting *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir. 1976) (citations omitted), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977)).

*In re Whiz Kids Dev., LLC*, 576 B.R. at 757. The court in *Fatsis* similarly stated that "[t]he test is whether the contemnor is 'able to ascertain from the four corners of the order precisely what acts are forbidden.'" 405 B.R. at 7 (citing *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002)). It added: "[t]he 'clear and unambiguous' standard is limited to an examination of the language of the order and does not include an inquiry into the legal efficacy of the order itself." Id.

**B.    Civil contempt and sanctions**

Civil contempt sanctions may be coercive or compensatory. If a sanction is compensatory, it may not exceed the actual damages caused. *Bagwell*, 512 U.S. at 829; *Gregor v. Depte*, 896 F.2d 31, 34 (3d Cir. 1990). As to Debtor, it is clear that she should be held in civil contempt:

**1.    Court's order [Dkt. No. 203].**

The Court's order required Debtor to file certain documents by June 18, 2020. She was able to ascertain from the four corners of the order precisely what actions she was required to take. At the §341 meeting on August 26, 2020, Debtor admitted that she has failed to comply with the order and perform her obligations. This is established by clear and convincing evidence. There is no evidence in the docket that she has complied with the order. A contempt order and sanctions are appropriate.

2.  **§341 meeting (August 26, 2020).**

Debtor refused to answer questions at the §341 meeting. Indeed, she wasted everyone's time with a contrived script that she repeated *ad naseam*. This Court granted John Potter's motion to withdraw as counsel on April 10, 2020 [Dkt. No. 140]. Despite this knowledge, Debtor appeared on August 26, 2020 and argued she was unable to answer questions because she didn't have counsel; yet she has taken no steps to secure new counsel. Under her logic, she will never answer questions because she will never have counsel. Debtor also claimed she could not answer questions because this Court (through its *Order Denying Motion to Dismiss* [Dkt. No. 232]) "invited" Debtor to file a new motion to dismiss and present a plan to "justly" pay all creditors. We can all read the Order. It says nothing of the sort. Rather, it specifically tells Debtor that she cannot simply file a notice of voluntary dismissal in a Chapter 7 case. The Order also states that scheduling a hearing on her motion "would only further delay this case to the detriment of parties in interest." The Court also summed up Debtor's actions in a footnote:

> 2.  The Motion's deficiencies are compounded by the Debtor's failure to file conversion schedules. Parties in interest can hardly be expected to evaluate the Debtor's affairs absent schedules and testimony from the Debtor at the meeting of creditors, among other things.

*Id*. Therefore, it is inconceivable for Debtor to tell us with a straight face that the Court's order somehow "invited" Debtor to file more motions and not answer questions. Such an interpretation is ludicrous and frivolous. It is bad faith. It serves no purpose other than delay.

Debtor is thumbing her nose at the Court. Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is "tantamount to bad faith." *Metz v Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011); *Railway Express, Inc. v Piper*, 447 U.S. 752, 767 (1980). Bad faith, in turn, is associated with conduct that is intentional or reckless. *Schafer v City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008). Courts have defined "recklessness"

as "highly unreasonable conduct which is an extreme departure from the standard of ordinary case." *United States v Wheeler*, 154 F. Supp. 2d 1075, 1078 (E.D. Mich 2001). Sanctions may also be warranted "where a party shows bad faith by delaying or disrupting the litigation." *Murray v City of Columbus, Ohio*, 534 F. App'x 479, 484 (6th Cir. 2013). If a party has engaged in bad-faith conduct, appropriate sanctions may include the imposition of attorney's fees or the dismissal of the party's claims, or conversely default judgment. *Murray*, 534 F. App'x at 484. Although the Sixth Circuit has repeatedly emphasized that the court's inherent power to sanction "must be exercised with restraint and discretion," the exercise of such authority is "particularly appropriate for impermissible conduct that adversely impacts the entire litigation." *Id*.

Debtor's conduct at the §341 meeting was the height of bad faith. Her conduct was designed solely to delay. Her conduct was intentional and reckless. She engaged in impermissible conduct that adversely impacted this case. A contempt order and sanctions are appropriate.

C. **Criminal contempt and sanctions**

The Court should also consider criminal contempt measures to compel compliance. "Generally, civil contempt 'is remedial, and for the benefit of the complainant,' while criminal contempt 'is punitive, to vindicate the authority of the court.'" *F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009) (citing *Bagwell*, 512 U.S. at 827-28). A monetary sanction can compensate a party while a coercive one should induce compliance with a court order. In contrast to civil contempt sanctions, a criminal contempt sanction is in the nature of an unconditional fine without an opportunity to reduce the fine through compliance. *Bagwell*, 512 U.S. at 829.

This court has authority under the bankruptcy code to impose criminal or punitive sanctions on parties who violate court orders, under either its inherent powers or §105 of the

Bankruptcy Code. This authority is confirmed in the Supreme Court's recent decision on that point in *Taggart v Lorenzen*, ____ U.S. _____, 139 S.Ct. 1795, ____ L.Ed.2d ____ (2019). In *Taggart*, the high court ruled a bankruptcy court may hold a party in contempt for that party's violation of an order, and impose sanctions, including punitive sanctions, if, using an objective standard the court finds "there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the order." *Id*. at 1804. In *Taggart*, the high court affirmed sanctions that included $105,000 for attorney's fees and costs, $5,000 for emotional distress, and $2,000 for punitive damages. *Id*. at 1801-02.

In this case, Debtor willfully violated this Court's order and willfully refused to answer questions at the §341 meeting. If we apply an objective standard, there is no doubt that Debtor's conduct was unlawful under the order. Criminal contempt and punitive sanctions are appropriate.

                                                Respectfully submitted

                                                DePERNO LAW OFFICE, PLLC

Dated: September 3, 2020                      */s/ Matthew S. DePerno*_____
                                                    Matthew S. DePerno (P52622)
                                                      951 W. Milham Avenue
                                                      PO Box 1595
                                                      Portage, MI 49081
                                                      (269) 321-5064
                                                      matthew@depernolaw.com