**FILED**

**IN THE WESTERN DISTRICT OF MICHIGAN BANKRUPTCY COURT**

2020 NOV 20 PM 4: 03

IN RE:  CHRISTINE SKANDIS

HON. JOHN GREGG

Debtor

CASE # 19-05319

MICHELLE M. WILSON, CLERK
U.S. BANKRUPTCY COURT
WESTERN DIST. OF MICHIGAN

## NOTICE OF LAWSUIT AGAINST MATTHEW S. DEPERNO (P52622) AND DEPERNO LAW

## NINTH OBJECTION TO CLAIM AS TO MATTHEW S. DEPERNO AND DEPERNO LAW

## MOTION TO VACATE AND DISCHARGE CLAIM FILED BY MATTHEW S. DEPERNO AND DEPERNO LAW

## MOTION PROHIBITING MATTHEW S. DEPERNO AND DEPERNO LAW FROM FILING ANY MORE FILINGS IN THIS CASE

## OBJECTION AND MOTION TO STRIKE MATTHEW S. DEPERNO AND DEPERNO PLEADING

NOW COMES SKANDIS, PRO SE, with her, Notice Of Lawsuit Against Matthew S. Deperno (P52622) And Deperno Law; Ninth Objection To Claim As To Matthew S. Deperno And Deperno Law; Motion To Vacate And Discharge Claim Filed By Matthew S. Deperno And Deperno Law; Motion Prohibiting Matthew S. Deperno And Deperno Law from Filing Any More Filings In This Case; Objection and Motion to Strike Matthew S. Deperno And Deperno Pleading; and states the below in support:

### NOTICE OF LAWSUIT AGAINST MATTHEW S. DEPERNO (P52622) AND DEPERNO LAW

On or about September 18, 2020, SKANDIS filed a lawsuit against Matthew Deperno and Deperno Law in Kalamazoo Circuit Court, Case 2020-0366-CK for, including but not limited to, counts **(i)** breach of contract; **(ii)** promissory estoppel; **(iii)** fraudulent misrepresentation; **(iv)** innocent misrepresentation; **(v)** exemplary damages; **(vi)** tortious interference with a business relationship; **(vii)** conversion; **(viii)** defamation; **(ix)** intentional infliction of emotion distress and **(x)** unjust enrichment claims.

### SKANDIS' OBJECTION TO CLAIM FILED BY MATTHEW S. DEPERNO AND DEPERNO LAW OFFICE A MINIMUM EIGHT TIMES

Skandis has objected, at a minimum of EIGHT times to this Court, as to Matthew S. DePerno and DePerno Law Office's "DEPERNO" fabricated false claim/invoices of her owing any amount of money to Deperno which it appears DEPERNO produced for the first time on or about February 20, 2020 – six months after Skandis fired Deperno. Skandis never received a single one of the false, fabricated invoices from Deperno – not by US mail, not by email, not verbally. Deperno violated Skandis rights to notice, contest and verify (alleged) debt (pursuant FDCPA) by making this false claim of money owed. Skandis has disputed Deperno's false invoices in detail in her Objection to Claim. **[Exhibit A]**

Skandis' Objection to Claim as to DEPERNO also includes, but not limited to: **[Exhibit A]**
   a) DEPERNO's Defective Appeal that resulted in Dismissal by the Court of Appeals
   b) DEPERNO's False Statements on Skandis' Appeal filed by ELDEAN'S Motion to Dismiss
   c) Police Report as to DEPERNO **Committing Burglary-Entering Without Permission**
   d) Skandis believes DEPERNO violated the following provisions of the Michigan Code of Professional Conduct:

   **MRPC: 1.1(b)** handling a legal matter without preparation adequate in the circumstances. Mr. DePerno failed to ascertain that all orders had been prepared and signed in the Circuit Court; failed to order and have prepared all necessary transcripts, and failed to serve copies on opposing counsel, and failed to prepare and file a brief. He filed an appeal which failed for lack of jurisdiction.
   **MRPC: 1.1(c)** neglected a legal matter entrusted to him. While spending great effort to protect his ability to get funds from me, Mr. DePerno failed to perfect the record, serve the opposition, and ever prepare and file a brief.
   **MRPC 1.3** failed to act with reasonable diligence and promptness in representing a client. Mr. DePerno, after being retained five months, never did complete transcript preparation or serve the opposition or file a brief.
   **MRPC 1.5** entered into an agreement for, and collected, and is still attempting to collect a clearly excessive fee.
   **MRPC 1.8(j)** obtained a proprietary interest in the subject matter of the litigation. I was trying to protect my property and prevent it being taken to satisfy a wrongful judgment. Mr. DePerno coerced me into signing a security agreement and mortgage incumbering my property, and suggested a way to hide it from Appellees.
   **MRPC 3.3(a)(1)** making a false statement of fact to a tribunal. Mr. DePerno falsely represented to the Court of Appeals that all transcripts had been filed with the trial court; that he personally served me with his motion to withdraw; and that I asked him to do something unethical.

It is Deperno that owes Skandis. Deperno coerced Skandis into incumbering everything she owns even when the property is being threatened by the collection efforts from the law suit he was pretending to appeal from, and performed unprofessionally, filing a defective appeal, and then filing a second appeal in a sloppy and incomplete manner, never filing the brief he insisted Skandis pay for in advance, and then withdrawing while lying about the reason. DEPERNO has taken Skandis' property and failed to return despite Skandis' demand to return. **[Exhibit, Docket 166_Exhibit 4_Deperno Refuses Service-Mail from Skandis]**

**SKANDIS' OBJECTION TO CLAIM FILED BY MATTHEW S. DEPERNO AND DEPERNO LAW OFFICE**
1. On or about December 26, 2019, Skandis' attorney advise the court of contested possessions taken by Matthew S. DePerno and DePerno Law Office "DEPERNO" (at that point in time DEPERNO's fabricated claim was unknown to Skandis as DEPERNO had never sent her his false, fabricated invoices.)

2. On or about Mar 12, 2020, Skandis advised her attorney John Potter that she disputed in its entirety claim filed by DEPERNO. **[Exhibit A]**
3. On or about Mar 26, 2020, Skandis advised her attorney John Potter that she disputed in its entirety claim filed by DEPERNO. **[Exhibit B]**
4. On or about April 20, 2020, Skandis filed an Objection to Claim as to DEPERNO. **[Exhibit C]**
5. On or about May 6, 2020, Skandis Objected to Claim filed by DEPERNO in Docket 166, Supplemental to Objection and Response to Trustee's Motion Summary Judgment **[Exhibit D]** and attached as Exhibits were:
    a. Docket 166_Exhibit 4_ DEPERNO Refuses Service-Mail from Skandis
    b. Docket 166_Exhibit 5_ DEPERNO's Appeal for Skandis Dismiss as Defective
    c. Docket 166_Exhibit 6_ DEPERNO's False Statements on Skandis' Appeal filed by ELDEAN'S Motion to Dismiss
    d. Docket 166_Exhibit 7_Skandis' Objection to Claim as to DEPERNO
6. On or about May 15, 2020, Skandis filed another Objection to Claim as to DEPERNO **[Exhibit E]**
7. On or about September 11, 2020, Skandis Objected to Claim filed by DEPERNO in Objection to Motion for Sanctions filed by Eldean, Davis, Deperno + Order 341 meeting. **[Exhibit F]**
8. On or about September 28, 2020, Skandis Objected to Claim filed by DEPERNO in Motion to Withdraw Chapter 7. **[Exhibit G]**

## **MOTION TO VACATE AND DISCHARGE CLAIM FILED BY MATTHEW S. DEPERNO & DEPERNO LAW**

Despite Skandis' numerous objections to DEPERNO's false fabricated claim/invoices – and DEPERNO's refusal to return Skandis' possessions - this court continues to appear to endorse DEPERNO. Skandis files this request to Vacate and Discharge Claim Filed By Matthew S. Deperno and Deperno Law so that the matter can be adjudicated in a court of law, Kalamazoo Circuit Court, Case 2020-0366-CK.

Alarmingly, DEPERNO committed similar acts against Mr. and Mrs. Moffit as he committed against Skandis.

> 2014-64076-CH-D, Moffits v Matthew Deperno (Van Buren Circuit Court) **[Exhibit H]**
> 2015-000175-CZ (Kalamazoo Circuit Court) **[Exhibit I]**
> Case 328739 (Michigan Court Of Appeals) **[Exhibit J]**

Kalamazoo Circuit Court, Case 2015-000175-CZ, <u>**ruled against MATTHEW S. DEPERNO** and **DEPERNO LAW OFFICE "DEPERNO" and in favor of the Moffits.**</u> **[Exhibit H]**

The MICHIGAN COURT OF APPEALS, Case 328739,<u> **ruled against MATTHEW S. DEPERNO** and **DEPERNO LAW OFFICE "DEPERNO" in December 2016** and in favor of the Moffits</u> stating in the COA Final Court Opinion: **[Exhibit J]**

> "The complaint [against DEPERNO] included allegations of assault and battery, intentional infliction of emotional distress, and malpractice [by Plaintiffs' Mr. and Mrs. Moffit]"

> "DePerno was retained <u>"to resolve a tax debt to the IRS of approximately **$36,000.**" DePerno apparently sought **$137,779.38**"</u>

Below are excerpts from **Michigan Court of Appeals** final court opinion stating, **[Exhibit J]**

"The complaint included allegations of assault and battery, intentional infliction of emotional distress, and malpractice, and it is clear to us that those allegations were obviously at issue in that case. While the Moffits may have elected not to further pursue those claims in hopes of facilitating settlement, plaintiffs' position that they were irrelevant to that case has no merit. Indeed, even if we assume that the Moffits' lawsuit against DePerno was limited solely to a fee dispute, the fact that DePerno allegedly assaulted and battered the Moffits, intentionally inflicted emotional distress on the Moffits, and committed malpractice in representing the Moffits certainly related to whether he was entitled to the $137,000 in attorney fees that he sought."

"According to the Moffits' complaint, DePerno was retained "to resolve a tax debt to the IRS of approximately $36,000." DePerno apparently sought $137,779.38, an amount greater than the $108,000 settlement reached between the Moffits and the insurance company. After the Moffits objected to the $137,000 amount, DePerno commenced a foreclosure action against the Moffits."

In this case, plaintiffs take issue with defendants' inclusion of a document entitled "Interoffice Memorandum" with their motion for summary disposition. This memorandum included discussions centering on DePerno's timekeeping issues with another law office. These issues included "time being entered without explanation," "billable hours being 'padded,' " "excessive" write-offs, and manipulations "of the timekeeping/bill system to maintain . . . quota hours on accounts that may not render payment."

"The complaint included allegations of assault and battery, intentional infliction of emotional distress, and malpractice, **and it is clear to us** [COA] **that those allegations were obviously at issue in that case.** While the Moffits may have elected not to further pursue those claims in hopes of facilitating settlement, plaintiffs' position that they were irrelevant to that case has no merit. Indeed, even if we assume that the Moffits' lawsuit against DePerno was limited solely to a fee dispute, the fact that DePerno allegedly assaulted and battered the Moffits, intentionally inflicted emotional distress on the Moffits, and committed malpractice in representing the Moffits certainly related to whether he was entitled to the $137,000 in attorney fees that he sought."

Regarding Michigan Court of Appeals' comments on DEPERNO's timekeeping issues with another law office, below is highlighted Interoffice Memorandum "MSD [MATTHEW SCOTT DEPERNO] TIMEKEEPING ISSUES" that was included as an exhibit in Moffit's Case against DEPERNO as support of DEPERNO's history of excessive and manipulative billing practice.

INTEROFFICE MEMORANDUM

TO: STEVE HESSEN, JEFF SWENARTON
FROM: MIKE BEAM
SUBJECT: MSD TIMEKEEPING
DATE: 10/12/05
CC: ALAN ENDERLE

*MSD = Matthew Scott DEPERNO (P52622)*

**CONFIDENTIAL**

### MSD TIMEKEEPING ISSUES

Following is a summary of timekeeping issues existing with Matt's time/clients. I believe there are 4 issues existing:

1. Time is being entered without an explanation.

2. Billable hours are being "padded." Time is being entered on clients with little chance of collection or immediately preceeding a write-off of the account balance.

3. As a result of #2, write-offs are excessive.

4. Matt appears to be manipulating the timekeeping/billing system to maintain his quota hours on accounts that may not render payment. New account codes have been opened with the same billing party while a collection problem is indicated with the existing account.

**Time Entries Without Explanation:**

There are a total of 75 hours entered during the calendar year with no description of time. This amounts to $14,590 of billed charges. One attachment shows these entries by date (may not be "all inclusive"). Some of these entries may be accidental, some may be billing against a prepaid to "use up" the balance, however, 75 hours seems excessive, particularly when looking at specific entries:

- Burrill Construction (MDBURR-04) - Prebill attached showing entries on 7/14, 7/20, 8/9, 8/10, 8/11 for a total of 17 hours of billed time after receipt of settlement agreement – FEG was litigating. Settlement received through our office was $15,000+; matter was hourly, not contingent. Total write-off of $10,706.

- Edge Design – Contingent Fee matter billed 16 hours on August 1 & 2 without explanation.

- Chamness (CHAMN-04) - 3 entries for a total of 11 hours without explanation.

**Excessive billing/write-offs (see attached "Collection Analysis"):**

In addition to time entries without explanation, Matt appears have significant time entered on accounts also having high write-offs:

- Burrill Construction – see above.

- Mencl – $28,493.76 written off – All matters locked on 7/13/05; Over $20,000 billed on August 9 followed by a write-off on August 22. All contingent fee cases have the following explanation entered in Juris: PER MSD WROTE OFF BALANCE OF $xx BECAUSE THEY ARE GOING BANKRUPTE. TAK–08/22/2005. MENCL-11,12,13 continue to carry a balance $3,656?

- Lavine – Billed $11,652 in May & June; $7,652 write-off; $63 collected; $4,000 balance. Entry in Juris: PER MSD ON HIS 06/30/2005 DRAFT THE BALANCE OF THIS ACCOUNT IS $11,652.00. WRITE OFF TO $4000.00 BALANCE. TAK==07/12/2005.

## Manipulating the system:

- Black Kase Cheese / Blair Schwatz – At the end of 2003, balance on SCHWZ account was $3,821.50. During all of 2004, the client paid $990.50 and we billed $308.50, leaving a balance at the end of 2004 of $3,139.50. During 2005, the client paid a $190 payment in January, we billed $7,743 in January, leaving a balance on SCHWZ of $10,692. On 4/25/05, a new code was opened for BLKASE, a total of $11,632 of time was billed on the code; a total of $200 in payments have been received on this account ($100 in August; $100 in September). See invoice/billed details attached.

- DeCuypere/Town & Country Sheet Metal. Similar to above a year earlier. DeCuypere account is a collection problem with MSD taking a hard line - locking the account and holding for payment. Eventually, DeCuypere account is closed and TOWCS account is opened. The balance on the DeCuypere matter "04 – Bankruptcy" is closed and moved to TOWCS matter "01-Business" and "02-Personal". Review of initial billings shows time spent on bankruptcy and reorganization matters with no prepaid balance on account. $20,600 billed within 4 months on payments of $442. Account locked per SJH instructions on 4/29/04.

- Edge Design – EDGE-02 opened with the following comments: 10/11/04 Adverse: NexTech Systems, Inc. (South Lyon, MI) and William Restis, Principal and 10/18/04 Original signed contingent fee agreement on file re S.J.S. Contractors, Inc./In the event there is no recovery, client agrees to pay expenses/In the event there is a recovery client agrees to pay expenses and attorney fees of 1/4 of the net recovery. followed by 3/31/05 NexTech, Inc. dba NexTek, Inc. FILE NO: Chapter 7 / File No. 05-48163 / EDMI DATE FILED: March 16, 2005 ASSETS: No Asset Case ADR: c/o William R. Restis. No change in fee agreement, billed $7,839 since note entered on Chapter 7 filing. Billing was sent out on this account in September, followed by call from client maintaining he didn't know what the billing was for; billing was adjusted back to unbilled time and then "rebilled" to client for 2005 time only. See attached email.. Why is this being billed now, billing was reversed then re-billed (but only for 2005 time)?

KECH000037



**KONING & JILEK, P.C.**
*Attorneys and Counselors*
8080 Moorshridge Road, Suite 103
Portage, Michigan 49024

PHONE (269) 343-1500
FACSIMILE (269) 492-9320

JAMES H. KONING*
jkoning@koningjilek.com

SUSAN C. COLLINS, Paralegal
susan@koningjilek.com

*Also admitted to practice in Illinois

April 23, 2015

Matthew S. DePerno
DePerno Law Office, PLLC
8175 Creekside Drive, Suite 240
Portage, MI 49024

   Re: **Moffit v DePerno**

Dear Mr. DePerno:

   I have been retained by the individuals to whom you directed your April 11, 2015 letter. First, I find it rather curious that you have apparently negotiated a confidential settlement yet the assumption left by me is that you intend to broadcast those terms.

   It is important to accurately set forth the history in this matter. Attorney Laaksonen believed, and remains of the belief, that all of his allegations were well founded and true. The fact that summary disposition was denied on your attempt to dismiss malpractice claims as well as your insurance company's contribution to a settlement belies any interpretation otherwise. It is true that by the end of the litigation, the case was about attorney fees. The reason for that is not a change of heart, but the fact that you were able to reduce the effects of the claimed malpractice by billing the clients for excessive services rendered which would not have been necessary, absent the claimed malpractice.

   Furthermore, while it is true that certain allegations were made for tactical reasons, that does not mean that the allegations were unsubstantiated or untrue.

   There seems to be a major disconnect between your assumptions regarding Mr. Laaksonen's "acknowledgment" and the history of what occurred. Mr. Laaksonen inquired and was specifically told by your attorney as well as the facilitator that the sole reason you wanted the acknowledgment was to assist you in obtaining future malpractice coverage. In fact, your attorney offered to include language which would refute any ulterior motives on your part and we have that offer in writing. My client deemed it unnecessary as he assumed good faith. Additionally, I know the facilitator



April 23, 2015
Page 2

Timothy Sheridan well as I have litigated cases against him. He is a man of honor and I am positive that as a case evaluator/mediator/facilitator, he would not induce Attorney Laaksonen to include language if he felt it was a trap. Your attorney's e-mail confirming the willingness to add court rule language which would directly alleviate him from complicity in any fraud speaks for itself. In short, both your attorney and the facilitator assured Mr. Laaksonen that the reason for the acknowledgment was to assist you in getting future insurance coverage.

The bottom line, Matt, is that there needs to come an end to all squirting matches. Attorney Laaksonen was lead to believe that the settlement was the end. Your letter, however, leaves the impression that you had and have other motives.

In an attempt to accommodate your stated need to obtain future malpractice coverage, Attorney Laaksonen agreed to the requested language. His suggestion as to modifications to the agreement which again restates that acknowledgment shows his good faith. The agreement calls for a standard release which would not include this acknowledgment and would not be signed by attorneys, but rather the parties.

My very strong suggestion is that you agree to Attorney Laaksonen's willingness to include the added language to your counsel's release or sign the release which I have drafted.

This was an emotional case and I understand the emotion. It is time to put this matter to bed. If you choose not to do so, however, please recognize that once you pull a gun, it is fairly difficult to put it back in the holster without being shot at.

Very truly yours,

KONING & JILEK, P.C.

James H. Koning

JHK/sc
Enc.



The below excerpts from ==Ronald Moffits' affidavit== are disturbingly similar to Skandis' terrifying encounter with DEPERNO: [Exhibit I, pages 52-56]

16. That on March 4, 2013, while the litigation was pending, Mr. and Mrs. Moffit were presented by DePerno Law Office PLLC with a new Fee Agreement, Promissory Note, and Security Agreement, together with a Mortgage securing fees against their home and were told that they needed to read the document and sign it.

17. That Mr. and Mrs. Moffit returned on March 5, 2013 and told Mr. DePerno that they were not comfortable signing the documents and did not believe that it was in their best interests.

18. That Mr. DePerno informed Mr. and Mrs. Moffit that if they did not sign the agreements he would fold his arms and say nothing during the Motion for Summary Disposition proceeding to take place in the middle of March.

19. The message to Mr. and Mrs. Moffit was clear and Mr. and Mrs. Moffit felt they had no choice but to sign the Promissory Note and Mortgage Agreement against their home.

...

28. That when Mr. and Mrs. Moffit expressed confusion, concern and eventually outrage at the size of DePerno Law Office PLLC's bill, as presented to them on February 20, 2014, Mr. DePerno physically grabbed Mr. Moffit by the shirt and informed him that if he does not immediately pay the attorney fees owed that Mr. and Mrs. Moffit would lose their home in a matter of weeks.

...

    d. Mr. and Mrs. Moffit believe that there are numerous other examples of overbilling or padded billings by Attorney DePerno.

32. That Mr. DePerno also told Mr. and Mrs. Moffit that he wanted Mr. and Mrs. Moffit to sue his old law firm, Veritas Group, because he estimated that it cost him $20,000.00 to reassemble their file due to the condition he received the file from the Veritas Group.

33. That Mr. and Mrs. Moffit are concerned that the payments they have made to DePerno Law Office PLLC are not reflected in his billings and that DePerno Law Office PLLC failed to provid any type of statement indicating the payments Mr. and Mrs. Moffit have made and how they have been applied to their account prior to the filing of this lawsuit.

34. That 6 days after the Moffits refused to pay the $137,000.00 bill in full, Deperno started foreclosure on two separate property's, their current home with an estimated value of over $150,000.00, and the land that their former home sat on with an estimated value of Over $50,000.00.

35. Deperno took this action while maintaining possession of the check for $109,879.00.

**AND FURTHER, Affiant sayeth not.**

_____
Ronald Moffit, Affiant

Sadly, Mr. Moffit barely survived two years after enduring this emotional duress.

Now I too am suffering ill health at the hands of Matthew Deperno [and others] and the stress of these court pleadings. If you do not believe the stress is real, please reference Legal Abuse Syndrome. Per Wikipedia,

**"Legal Abuse Syndrome (LAS) is a form of post traumatic stress disorder (PTSD) caused by ethical violation, legal abuse, betrayal, abuse of power, abuse of authority, lack of accountability and fraud."**

People that know me tell me my health and life are not worth sacrificing to obtain justice and equity. They tell me the Courts are unfair and side with attorneys no matter what, that I will never prevail as a pro per. So far, they are correct on all counts. I had faith in the justice system, but my faith is dissipating as the stress is waning my health.

### MOTION PROHIBITING MATTHEW S. DEPERNO (P52622) AND DEPERNO LAW FROM FILING ANY MORE FILINGS IN THIS CASE

For the reasons cited above MATTHEW S. DEPERNO and DEPERNO LAW OFFICE "DEPERNO" do not have a legitimate claim in this case. Skandis requests that this Court prohibit DEPERNO from filing any more filings in this case. Interestingly, the entire 5 months Deperno was representing Skandis in her appeal he could not manage to file the one single brief he promised to file. However, in his false Claim against Skandis in this Case Deperno manages to file pleading after pleading, day after day.

### MOTION TO STRIKE MATTHEW S. DEPERNO AND DEPERNO LAW PLEADINGS

For the reasons cited above MATTHEW S. DEPERNO and DEPERNO LAW OFFICE "DEPERNO" do not have a legitimate claim in this case. DEPERNO's pleadings are vexatious and burdensome. Skandis requests that this Court strike DEPERNO's pleadings as he does not have a legitimate claim in this case.

Skandis asserts that she has filed Schedules for CASE # 19-05319 and Skandis' Plan was confirmable.

WHEREFORE, for the reasons cited above, Skandis requests this Court:

a. Grant her Motion To Vacate And Discharge Claim Filed By Matthew S. Deperno And Deperno Law;
b. Grant Motion Prohibiting Matthew S. Deperno And Deperno Law from Filing Any More Filings In This Case;
c. Strike DEPERNO's filings in this case;

Without the granting of these Motions, Skandis will continue to be prejudiced, be denied Due Process, will continue to suffer substantial injustice and significant harm including, but not limited to, loss of time to devote to business, continued legal efforts, DEPERNO collecting on a disputed fabricated false claim and wrongfully seizing her property.

Respectfully,                                                                 Dated: October 11, 2020

Christine Skandis

312 Hoffman Street
Saugatuck, MI 49453

IN THE WESTERN DISTRICT OF MICHIGAN BANKRUPTCY COURT

IN RE: CHRISTINE SKANDIS

Debtor

HON. JOHN GREGG

CASE # 19-05319

PROOF OF SERVICE

I hereby certify that on October 11, 2020 a copy of the below listed documents and This Proof of Service were served upon the Clerk of the Court by US mail or emailing same to the Western District of Michigan Bankruptcy.

Documents Served:

Notice Of Lawsuit Against Matthew S. Deperno (P52622) And Deperno Law;
Ninth Objection To Claim As To Matthew S. Deperno And Deperno Law;
Motion To Vacate And Discharge Claim Filed By Matthew S. Deperno And Deperno Law;
Motion Prohibiting Matthew S. Deperno (P52622) And Deperno Law from Filing Any More Filings In This Case;
This Proof Of Service

Dated: October 11, 2020

Christine Skandis

312 Hoffman Street
Saugatuck, MI 49453

FILED 2020 NOV 20 PM 4:03
MICHELLE M. WILSON, CLERK
U.S. BANKRUPTCY COURT
WESTERN DIST. OF MICHIGAN