Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |

**STATE OF MICHIGAN**

9TH **JUDICIAL DISTRICT**
**JUDICIAL CIRCUIT**
**COUNTY PROBATE**

**SUMMONS**

**CASE NO.**

2020-03466 CC

**Court address**
150 E Crosstown Pkwy, Kalamazoo, MI 49001

Court telephone no.
(269) 383-8837

**Plaintiff's name(s), address(es), and telephone no(s).**
Christine Skandis
312 Hoffman St.,
Saugatuck MI 49453
269-998-9300

v

**Defendant's name(s), address(es), and telephone no(s).**
MATTHEW S. DEPRERNO
951 W. Milham Ave.
Portage Michigan 49081

DEPERNO LAW OFFICE, PLLC
951 W. Milham Ave.
Portage Michigan 49081

**Plaintiff's attorney, bar no., address, and telephone no.**
Plaintiff in Pro Per

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

**SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date | Court clerk |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**

MCR 1.109(B), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**In the State of Michigan**
**Kalamazoo County Circuit Court**

CHRISTINE SKANDIS

      Plaintiff,

V.

MATTHEW S. DEPRERNO,

DEPERNO LAW OFFICE, PLLC,

      Defendants. - jointly and severally liable –

ALEXANDER C. LIPSEY

Honorable:
Case Number: 20-_____ -CK

Jury Demand

Christine Skandis
Plaintiff, Pro Per
312 Hoffman Street
Saugatuck, MI 49453

MATTHEW S. DEPRERNO
951 W. Milham Ave.
Portage Michigan 49081

DEPERNO LAW OFFICE, PLLC
951 W. Milham Ave.
Portage Michigan 49081

## PLAINTIFF'S JURY DEMAND

NOW COMES the Plaintiff, Christine Skandis, Pro Per, submits this Jury Demand in the above referenced case number.

      Dated:    September 18, 2020
              Respectfully submitted,

              Christine Skandis
              Plaintiff, In Pro Per
              312 Hoffman Street
              Saugatuck, MI 49453

**In the State of Michigan**
**Kalamazoo County Circuit Court**

ALEXANDER C. LIPSEY

CHRISTINE SKANDIS
     Plaintiff,

V.

MATTHEW S. DEPRERNO,

DEPERNO LAW OFFICE, PLLC,

     Defendants. - jointly and severally liable –

Honorable:
Case Number: 20-_____ -CK
Jury Demand

_____/

Christine Skandis
Plaintiff, Pro Per
312 Hoffman Street
Saugatuck, MI 49453

MATTHEW S. DEPRERNO
951 W. Milham Ave.
Portage Michigan 49081

DEPERNO LAW OFFICE, PLLC
951 W. Milham Ave.
Portage Michigan 49081

## COMPLAINT

*NOW COMES THE PLAINTIFF, PRO SE,* with her verified Complaint and states:

### STATEMENT OF FACTS

1. CHRISTINE SKANDIS is a natural resident in the State of Michigan.

2. MATTHEW S. DEPRERNO "DEPRERNO" does business in Kalamazoo, Michigan.

3. DEPERNO LAW OFFICE, PLLC "DEPRERNO LAW" does business in Kalamazoo, MI.

4. There was a contract for services on or about April 2019; Defendants MATTHEW S. DEPRERNO and DEPRERNO LAW breached the contract.

5. The proper venue is Kalamazoo County Circuit Court because the amount in controversy exceeds $25,000.00 (twenty-five thousand and 00/100 dollars.)

6. There is no other pending or resolved civil action arising out of the same transaction or occurrence alleged in this complaint.

## COUNT I
## BREACH OF CONTRACT

7. The Plaintiff reasserts all paragraphs herein.

8. Michigan courts recognize a duty of good faith in a contractual relationship where a party is given discretion to make a determination under the contract.

9. Defendants' conduct as described in this Complaint constitutes multiple breaches of its duty of good faith and fair dealing.

10. As a result of Defendants' breach of the implied covenant of good faith and fair dealing Plaintiff has suffered damages.

11. As a direct and proximate result, Defendants damaged and continue to damage Plaintiff.

## COUNT II
## PROMISSORY ESTOPPELL

12. Plaintiff reaffirms all paragraphs herein.

13. Plaintiff relied on the statements of the Defendants.

14. Defendants made a clear and definite promise.

15. Defendants should have expected that the promise would induce reliance and that there was a change in the Plaintiff's position due to reliance on the promise;

16. That injustice can be avoided only by enforcing the promise.

17. Defendants had a duty to protect the ability of individuals to trust promises in circumstances where trust is essential and by failing to do so acted in a negligent manner.

18. As a direct and proximate result, Defendants damaged and continue to damage Plaintiff.

## COUNT III
## FRAUDULENT MISREPRESENTATION

19. Plaintiff reaffirms all paragraphs herein.

20. Defendants intentionally made false representations of material facts.

21. Defendants representations were false when they were made.

22. Defendants knew that its representations were false when they were made or made them recklessly, without knowing whether they were true.

23. Defendants intended that Plaintiff rely on the representations.

24. Plaintiff relied on Defendants' false representations.

25. As a result of Defendants' fraudulent misrepresentations, Plaintiff has suffered substantial economic losses.

## COUNT IV
### INNOCENT MISREPRESENTATION

26. Plaintiff reaffirms all paragraphs herein.

27. Defendants' representations, as set forth in the preceding paragraphs, were made in connection with the making of a contract between Plaintiff and Defendants.

28. Plaintiff suffered and continues to suffer substantial economic losses as a result of entering into the contract, and her losses benefitted and benefit Defendants.

29. As a direct result of Defendants innocent misrepresentation, Plaintiff has suffered substantial economic losses.

## COUNT V
### EXEMPLARY DAMAGES

30. Plaintiff reaffirms all paragraphs herein.

31. Defendants' representations were made intentionally and maliciously and have caused Plaintiff to suffer humiliation, outrage, and indignation.

32. As a direct and proximate result, Defendants damaged and continue to damage Plaintiff.

## COUNT VI
### TORTIOUS INTERFERENCE OF A BUSINESS RELATIONSHIP

33. Plaintiff reaffirms all paragraphs herein.

34. Plaintiff has spent years building positive relationships specifically in the Business communities.

35. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered substantial economic injury, loss of goodwill, harm to its business reputation, loss of esteem and standing in the community, and loss of business opportunities.

## COUNT VII
### CONVERSION

36. Plaintiff reaffirms all paragraphs herein.

37. The acts described above constitute unlawful conversion of Plaintiff's property.

38. As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged in the manner outlined above.

## COUNT VIII
## DEFAMATION

39. The Plaintiff reaffirms all paragraphs herein.

40. Defendants made and continue to make unprivileged communications to the world and any and all future, past, and present colleagues, friends, former friends, current, present and future business colleagues, and the like.

41. Others believed these false representations and that Plaintiff did not own her property.

42. Defendants published the remarks to third parties with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.

43. The publication was not privileged.

44. The publication of these remarks has resulted in damage to Plaintiff's reputation in the community and economic loss, including, but not limited to, the following:

    a.  Loss of business

    b.  Time value of money

    c.  Revenue from the loss of business

    d.  Emotional distress

    e.  Humiliation, mortification, and embarrassment

    f.  Sleeplessness and anxiety

    g.  Other damages that may arise during the course of discovery and the course of this trial

    h.  Defendants' accusations were Defamation Per Se.

45. As a direct and proximate result, Defendants damaged and continue to damage Plaintiff.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46. The Plaintiff reaffirms all paragraphs herein.

47. Defendants' conduct as outlined above in all of the paragraphs was intentional.

48. Defendant's conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

49. Defendants' conduct as outlined above was for an ulterior motive or purpose.

50. Defendants' conduct resulted in severe and emotional distress.

51. As a direct and proximate result, Defendants damaged and continue to damage Plaintiff.

## COUNT XI
## UNJUST ENRICHMENT

52. Plaintiff reaffirms all paragraphs herein.

53. Under the doctrine of unjust enrichment, a person who receives a benefit from another, the retention of which benefit results in inequity, may be ordered to make restitution.

54. As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged in the manner outlined above.

As a direct and proximate result of Defendants' conduct, Defendants damaged and continue to damage Plaintiff in amounts greater than $25,000.00 (twenty-five thousand and 00/100 dollars.)

WHEREFORE the Plaintiff respectfully requests judgment in her favor for:

1. Damages in excess of $25,000.00 (twenty-five thousand and 00/100 dollars)

2. Any and all costs

3. Any and all damages deemed appropriate by this Honorable Court.

Dated:    September 18, 2020

Respectfully submitted,

Christine Skandis
Plaintiff, Pro Per
312 Hoffman Street
Saugatuck, MI 49453
emailchristine123@gmail.com

# UNITED STATES BANKRUPTCY COURT WESTERN DISTRICT OF MICHIGAN

IN RE: CHRISTINE SKANDIS
Debtor

_____ /

Chapter 13 Case No. 19-05319-jtg
Hon. John T. Gregg
Case Filed: 12/26/2019

## OBJECTION TO CLAIM

---

### NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 30 days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.

If you object to the relief requested in this paper, you must file a response with the **Clerk of the Court at One Division Avenue North, Room 200 Grand Rapids, MI 49503** and serve a copy on the movant **Christine Skandis, 312 Hoffman Street, Saugatuck, Michigan 49453**, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

Debtor, Christine Skandis, Pro Se, objects to the proof of claim filed in this case by Matthew S. DePerno, DePerno Law Office and in states:

1. This case was commenced by the filing of a bankruptcy petition on December 26, 2019.

2. Matthew S. DePerno, DePerno Law Office (hereinafter "Creditor") filed a purported proof of claim **(Claim No. 8.2)** in the amount of **$33,826.28** for **alleged legal fees**.

3. Debtor objects to Claim No. **8.2, please see attached for basis for objection.**

   **WHEREFORE**, the Debtor(s) respectfully request(s) that the Court: (1) Sustain the Debtor(s) objection to the Creditor's proof of claim; (2) Disallow the claim as a legally unenforceable debt; and (3) Grant any other such relief as the Court determines just and proper, including attorneys' fees for bringing this objection.

   Dated: May 15, 2020

Christine Skandis, Debtor, Pro Se
312 Hoffman St.
Saugatuck, MI 49453

---

*All references to "Debtor" include and refer to both debtors in a case filed jointly by two individuals.

## PROOF OF SERVICE

A true and correct copy of the foregoing has been sent by either electronic transmission or U.S. Mail on **May 15, 2020** to: Clerk of the Court, Chapter 13 Trustee, and Creditor.

Christine Skandis, Debtor, Pro Se
312 Hoffman St.
Saugatuck, MI 49453



**DePerno Law Office, PLLC**

951 W. Milham Avenue
PO Box 1585
Portage, MI 49081

PHONE #    (269) 321-5064    FAX #    (269) 353-2726

MATTHEW@DEPERNOLAW.COM

WWW.DEPERNOLAW.COM

## ACCOUNT STATEMENT

| Date |
|---|
| 02/20/2020 |

To:

Ms. Christine Skandis
312 Hoffman Street
Saugatuck, MI 49453

| | Amount Due | Amount Enc. |
|---|---|---|
| | 33,826.28 | |

| Date | Invoice Number | Invoice Amount | Payment Number | Payment Amount | Interest 5.00% | Balance |
|---|---|---|---|---|---|---|
| 08/30/2018 | | | cash | 500.00 | | (500.00) |
| 09/10/2018 | | | cash | 500.00 | | (1,000.00) |
| 09/22/2019 | 3455 | 5,302.36 | | | | 4,302.36 |
| 10/19/2018 | 3516 | 310.56 | | | 15.91 | 4,628.83 |
| 02/20/2019 | | | cash | 500.00 | 78.63 | 4,207.46 |
| 02/25/2019 | | | cash | 500.00 | 2.88 | 3,710.34 |
| 02/28/2019 | 3678 | 5,655.20 | | | 1.52 | 9,367.07 |
| 04/10/2019 | 3724 | 2,610.00 | | | 52.61 | 12,059.68 |
| 07/15/2019 | 3818 | 8,589.22 | | | 158.59 | 20,807.49 |
| 07/16/2019 | | | check | 1,000.00 | 2.85 | 19,810.34 |
| 07/30/2019 | 3848 | 4,550.06 | | | 37.99 | 24,398.39 |
| 08/15/2019 | 3851 | 4,712.40 | | | 53.48 | 29,164.27 |
| 08/29/2019 | 3869 | 3,814.16 | | | 55.93 | 33,034.36 |
| 02/20/2020 | | | | | 791.92 | 33,826.28 |

| | | |
|---|---|---|
| **TOTAL:** | 1,252.32 | 33,826.28 |
| **BALANCE DUE:** | | **33,826.28** |

---

**Deperno's fabricated false claim/invoices includes the following false representations to the court:**

1. Mr. Deperno lists alleged invoices numbers in his fabricated "account statement." I am only learning about this because he uploaded this to the court and only seeing it because my attorney downloaded it and gave me a copy on March 20, 2020. I have never seen these before and have never received a single copy of his alleged invoices in the mail or via email.

2. I did not retain Mr. Deperno for services until Feb 2019. However, Mr. Deperno has fabricated bills/invoices for alleged services in 2018. If these invoices did indeed exist, the "agreements" I was coerced into signing would have reflected this alleged debts.

3. I never gave Mr. Deperno $500 cash on 8/30/2018 or $500 cash 9/10/2018.

4. In fall of 2018, I only met Mr. Deperno because I attended an interview with another person that was interviewing Mr. Deperno but never hired him.

5. Mr. Deperno failed to credit payment of $1000 on 2/19/2020, I believe, check number 106. This is the first time I retained him for services.

6. Mr. Deperno failed to credit payment of $3000 he received in April 2019.

7. Mr. Deperno failed to credit payment of $500 paid 7/29/2019, check #1061.

8. Mr. Deperno did not credit collateral he held to satisfied demand of $5000 collateral he received June 2019.

9. Mr. Deperno did not credit the collateral he took under threat and coercion from my home July 2019.

10. Mr. Deperno billed me for numerous hours he spent in effort to get funds from me.

11. Mr. Deperno billed for events that never took place.

## POLICE REPORT
## MATTHEW SCOTT DEPERNO (P52622)
## Committed Burglary-Entering Without Permission

Mr. Deperno refused to cooperate with Investigating Officer without an attorney for reasons it would incriminate him. Police Officer called Mr. Deperno's attorney however he refused to return the Police Officer's calls. This is still an open and pending investigation against Mr. Deperno for Committed Burglary-Entering Without Permission. The Police Officer has strongly urged me to obtain a Personal Protection Order (PPO) against Mr. Deperno.

PPO against Mr. Deperno by recommendation of Police Officer Aday is in process.

---

### Incident/Investigation Report

**Agency:** KDPS    **Case Number:** 19-016667    **Date:** 12/30/2019 15:04:33

---

### Incident Information

| Date/Time Reported | Date/Time Occurred | Date/Time Found | Officer |
|---|---|---|---|
| 10/02/2019 10:00 | | | (14545) ADAY, TREVOR |

| Incident Location |
|---|
| 530 W South St, Kalamazoo, MI 49007 |

---

### Charges

| | Charge Type | Description | | | Statute | UCR | |
|---|---|---|---|---|---|---|---|
| 1 | City | BURGLARY-ENTERING WITHOUT PERMISSION | | | 22003 | 90Z | ☐ Att ☑ Com |

| Alcohol, Drugs or Computers Used | | Location Type | Premises Entered | Forced Entry | Weapons |
|---|---|---|---|---|---|
| ☐ Alcohol  ☐ Drugs  ☐ Computers | | GROCERY / SUPERMARKET | | ☐ Yes ☑ No | 1. |

| Entry | Exit | | Criminal Activity | | 2. |
|---|---|---|---|---|---|
| | | | | | 3. |

| Bias Motivation | Bias Target | Bias Circumstances | Hate Group |
|---|---|---|---|
| | | | |

---

### Victims

| Seq. # | Type | Injuries | Residency Status | | Ethnicity |
|---|---|---|---|---|---|
| 1 | INDIVIDUAL | None | Unknown | | |

| Name(Last, First, M) | Race | Sex | DOB | Age |
|---|---|---|---|---|
| SKANDIS, CHRISTINE JOY | W | F | 10/16/1960 | 58 |

| Address | Home Phone |
|---|---|
| 530 W SOUTH, KALAMAZOO, MI 49007 | (269) 998-9300 |

| Employer Name/Address | Business Phone |
|---|---|
| SKANDIS FINE WINES    / 530 W SOUTH ST | |

| Victim of Crimes |
|---|
| 1 |

---

## Incident/Investigation Report

Agency: KDPS          Case Number: 19-016667          Date: 12/30/2019 15:04:33

| Offenders | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Seq.# | Type | Name(Last, First, M) | | | | | | |
| 1 | INDIVIDUAL | DEPERNO, MATTHEW SCOTT | | | | | | |
| AKA | | | Race | Sex | DOB | Age | Height | Weight |
| | | | W | M | | 50 | | |

**Address**
, KALAMAZOO, MI 49009

**Home Phone**

**Employer Name/Address**
/

**Business Phone**

**Scars, Marks, Tatoos or other distinguishing features**

**Physical Characteristics**

**Suspect Details**

| Related Name Relationships | | | | |
|---|---|---|---|---|
| SKANDIS, CHRISTINE JOY | is | OTHERWISE KNOWN | to | DEPERNO, MATTHEW SCOTT |

## Incident/Investigation Report

**Agency: KDPS**          **Case Number:** 19-016667          **Date:** 12/30/2019 15:04:33

## Notes/Narratives

### NARRATIVE

---

PROBABLE CAUSE / SUMMARY:

On Wednesday, October 2nd 2019 at approximately 1000 hours, PSO Aday was dispatched to 530 W South St, in the City of Kalamazoo, County of Kalamazoo, and State of Michigan for a late report of an illegal entry. The reporting party/victim, Christine Skandis believes her former attorney, Matthew Deperno entered her home on or about September 21st, 2019 and placed a set of legal documents on her kitchen countertop without her permission. No witnesses were advised and no force was believed to be used.


CHARGING REQUEST:

The victim Christine Skandis desires prosecution for Illegal Entry.


DISPATCH:

Kalamazoo Consolidated dispatched advised the following information,

[10/2/2019 10:01:22 AM DANET\KPRYSON] LATE REPORT
[10/2/2019 10:01:29 AM DANET\KPRYSON] NO FORCE ENTRY
[10/2/2019 10:01:38 AM DANET\KPRYSON] UNK WHO COULD HAVE DONE
[10/2/2019 10:02:05 AM DANET\KPRYSON] UNK IF THEY TOOK ANYTHING -- HAVE PAPERS ON THE COUNTER WITH THE PERSONS NAME OF WHO COULD HAVE DONE IT **
[10/2/2019 10:02:36 AM DANET\KPRYSON] WILL BE HOME UNIL 1130


VICTIM INTERVIEW (CHRISTINE SKANDIS):

Skandis was verbally identified and later confirmed with a photo in I/Leads.

Her contact information was updated in I/Leads.

Skandis said that she owns 530 W South St, however she resides in Saugatuck, MI.  Skandis said that on September 22nd, 2019 she had found an envelope on her kitchen countertop at 530 W South St. She said that she opened the enveloped and discovered it to be a set of legal documents from her attorney, Matthew Deperno. Skandis believes that her former attorney, Matthew Deperno entered her home without her permission or knowledge and placed the documents on her countertop. Skandis was asked if any force was used to enter her home. She said that she believed the side door on the east side of the residence may have been left unsecured at that time. Skandis was asked for any possible surveillance cameras or witnesses. None were provided. Skandis was asked if anything was missing or broken. Skandis said no, however she did say on July 17th, 2019 Matthew Deperno collected several pieces of property with her permission to avoid collections from obtaining her property. Skandis said she has yet to get her property back and was interested in listing them as stolen. Skandis was referred to the civil courts in pursuant to her property.

Skandis was asked if she had confronted her attorney about the found paperwork reference her findings. Skandis said that she did not. Skandis was asked why she waited so long to make a criminal report. Skandis said that she called dispatch the day of the complaint; however she said that the police were busy with a large accident on the highway. Additionally, she said that she did not know which police agency to contact. Skandis was asked if Deperno ever had a set of her house keys. Skandis said he did for two separate occasions which she provided to him. She said that she always got the key back but was unsure if he had made a copy.

Skandis also wanted to list her Jaguar that was previously parked at 530 W South St to be stolen. Please refer to case KDPS case number 19-016669 for additional information. (The suspect is unrelated to this case).

---

Report: r_lw1ni.frx          Printed by: (14289) FUNK, CARRIE   at 12/30/2019 15:04          Page 3 of 4

## Incident/Investigation Report

Agency: KDPS          Case Number: 19-016667          Date: 12/30/2019 15:04:33

## Notes/Narratives

EVIDENCE:
N/A


ATTACHMENT:
The legal documents that were found by Skandis were scanned into the I/Leads attachment section.


SUSPECT INTERVIEW (MATTHEW DEPERNO):
Matthew Deperno was successfully contact via TX.

Deperno referred me to his legal attorney, Robert Baker (269-686-9448) to schedule a meeting in reference to this case.

No interview was conducted.

*I did attempt to get in touch with Robert Baker.


ADDITIONAL:
-Skandis provided me an additional case number issued by Van Buren County (16622-19) reference her home being illegally entered in Saugatuck, MI. Skandis believes Deperno was responsible for the incident as well.


BODY CAMERA:
My department issued body camera was active during the investigation.


This concludes my investigation.


Respectfully Submitted,
PSO Trevor Aday #14545
October 2nd, 2019 @ 1330 hours

---

CONTINUATION
--------------------------------------------------------------------------------------------------------------------

[EMPTY]

---

Report: r_lw1ini.frx          Printed by: (14289) FUNK, CARRIE   at 12/30/2019 15:04          Page 4 of 4

From: **Christine Skandis** <skandis@umich.edu>
Date: Thu, Mar 12, 2020 at 12:14 PM
Subject: Re: FW: Skandis
To: John Potter <jpotter@twoheylaw.com>

Hi John,

Thank you for your email.  I gave you a call shortly ago to discuss this email as well as the email from the Trustee yesterday.  Thank you for calling me back at your convenience.

Mr. DePerno's claim is disputed. I have yet to receive a bill or statement of services from Mr. DePerno.  In fact, his Engagement Agreement I was coerced into signing (Service and Billing Memorandum page 1, second to last paragraph) says he can refuse to give one without a reason.

When I met with another attorney they stated his efforts should not have cost over $1000.  Mr. DePerno was paid $7500 plus coerced me into encumbering everything I own.

He filed an appeal on April 22, 2019 (Case number 348765). He had me paying fees myself and delivering documents.  The appeal was dismissed May 21, 2019 as defective for lack of jurisdiction.

On June 5, 2019 Mr. DePerno again filed a claim of appeal (Case number 349218). Mr. DePerno failed to file the brief timely and instead requested an extension of time to file the same. He was granted an extension to August 28, 2019.

On or about June 29, 2019 Mr. DePermo emailed me an engagement Agreement, a Note for $12,000, a Security Agreement, a Guarantee and a mortgage, demanding I execute the documents or he would not file the necessary brief in the Court of Appeals. I felt forced to sign the documents and get the guarantee.

The brief he promised was never filed.

Instead, on August 21, 2019 Mr. DePerno committed a breaking and entering of my residence in Kalamazoo and in Saugatuck,  entering my homes without my knowledge or permission, and in each case on my table there was deposited the motion and notice of hearing to withdraw scheduled for August 23, 2019.  DePerno falsely represented that I had been personally served. He also falsely claimed in his motion that I asked him to do something unethical.  My only request was that he process the appeal.

I was forced to file my own brief.  I also had to defend a motion to dismiss my appeal because Mr. DePerno not only failed to file his brief, he falsely stated with the claim of appeal that all transcripts for hearings on the orders appealed from had been completed and filed with the trial court.  Only three of the five had been filed. DePerno also had failed to serve a single transcript on opposing counsel as required by MCR 7.210(B)(1) and 7.210(F).  He also failed to comply with MCR 7.212(C)(7).

In summary I feel Mr. DePerno has abused me, lied to me, coerced me into encumbering everything I own even when my property is being threatened by the collection efforts from the lawsuit he was pretending to appeal from, and performed unprofessionally, filing a defective appeal, and then filing a second appeal in a sloppy and incomplete manner, never filing the brief he insisted I pay for in advance, and then withdrawing while lying about the reason. It is in part Mr. DePerno's

Thank you John.

Christine

From: **Christine Skandis** <skandis@umich.edu>
Date: Thu, Mar 26, 2020 at 2:04 AM
Subject: Deperno - False claim/invoices + Violated my rights to notice, contest, verify debt
To: John Potter <jpotter@twoheylaw.com>

Hi John,
Below are details of Deperno's fabricated false claim/invoices. I never received a single invoice from him either via US mail or email, violating my rights to notice, contest and verify (alleged) debt (pursuant FDCPA). I am attaching the Grievance which has more details of his violations.
Thank you John.
Christine

Deperno's fabricated false claim/invoices includes the following false representations to the court:

1.    Mr. Deperno lists alleged invoices numbers in his fabricated "account statement." I am only learning about this because he uploaded this to the court and only seeing it because my attorney downloaded it and gave me a copy on March 20, 2020. I have never seen these before and have never received a single copy of his alleged invoices in the mail or via email.

2.    I did not retain Mr. Deperno for services until Feb 2019. However, Mr. Deperno has fabricated bills/invoices for alleged services in 2018. If these invoices did indeed exist, the "agreements" I was coerced into signing would have reflected this alleged debts.

3.    I never gave Mr. Deperno $500 cash on 8/30/2018 or $500 cash 9/10/2018.

4.    In fall of 2018, I only met Mr. Deperno because I attended an interview with another person that was interviewing Mr. Deperno but never hired him.

5.    Mr. Deperno failed to credit payment of $1000 on 2/19/2020, I believe, check number 106. This is the first time I retained him for services.

6.    Mr. Deperno failed to credit payment of $3000 he received in April 2019.

7.    Mr. Deperno failed to credit payment of $500 paid 7/29/2019, check #1061.

8.    Mr. Deperno did not credit the satisfied demand of $5000 collateral he received in June 2019.

9.    Mr. Deperno did not credit the collateral he took under threat and coercion from my home July 2019.

10.  Mr. Deperno billed me for numerous hours while spending great effort to get funds from me.

11.  Mr. Deperno billed for events that never took place.

  I was forced to file my own brief. I also had to defend a motion to dismiss my appeal because Mr. DePerno not only failed to file his brief, he falsely stated with the claim of appeal that all transcripts for hearings on the orders appealed from had been completed and filed with the trial court. Only three of the five had been filed. DePerno also had failed to serve a single transcript on opposing counsel as required by MCR 7.210(B)(1) and 7.210(F). He also failed to comply with MCR 7.212(C)(7).
  Now 6 months after he withdrew from the appeal, Mr. DePerno suddenly fabricates a claim of an additional $33,826.28 owed to him. I only learned of this alleged debt through his filing of a claim in my bankruptcy. I have never received or seen any of the invoices that he alleged in his fabricated claim until my attorney provided me a copy on March 20, 2020.

The Fair Debt Collection Practices Act (FDCPA) and federal laws provide that an individual has a right to notice of a debt; right to contest a debt; and right to verify a debt. Mr. Deperno has violated these laws. I have never received any of his alleged invoices – either by US Mail or email - for me to have the opportunity to dispute.

 In fact, his Engagement Agreement I was coerced into signing (Service and Billing Memorandum page 1, second to last paragraph) says he can refuse to give one without a reason.

   Mr. Deperno has falsely represented to the bankruptcy court that I am "a chronic and serial bankruptcy filer" when I have never filed a bankruptcy before in my life.  I believe his actions are clear and intentional acts to continue to harm me.  Mr. Deperno represented to me that this was an easy appeal, had he acted with reasonable diligence and promptness I would not be in a bankrupt position now.

   In summary I feel Mr. DePerno has abused me, lied to me, coerced me into incumbering everything I own even when my property is being threatened by the collection efforts from the law suit he was pretending to appeal from, and performed unprofessionally, filing a defective appeal, and then filing a second appeal in a sloppy and incomplete manner, never filing the brief he insisted I pay for in advance, and then withdrawing while lying about the reason.

I believe Mr. DePerno violated the following provisions of the Michigan Code of Professional Conduct:

   **MRPC: 1.1(b)** handling a legal matter without preparation adequate in the circumstances. Mr. DePerno failed to ascertain that all orders had been prepared and signed in the Circuit Court; failed to order and have prepared all necessary transcripts, and failed to serve copies on opposing counsel, and failed to prepare and file a brief.  He filed an appeal which failed for lack of jurisdiction.
**MRPC: 1.1(c)** neglected a legal matter entrusted to him.  While spending great effort to protect his ability to get funds from me, Mr. DePerno failed to perfect the record, serve the opposition, and ever prepare and file a brief.
   **MRPC 1.**3 failed to act with reasonable diligence and promptness in representing a client.
Mr. DePerno, after being retained five months, never did complete transcript preparation or serve the opposition or file a brief.
   **MRPC 1.5** entered into an agreement for, and collected, and is still attempting to collect a clearly excessive fee.  Mr. DePerno collected $4,000 from me, and then insisted I pay $5,000 in June before he would file a brief. I gave his agent property that was to satisfy the demand.  He then insisted I sign the Fee Agreement, $12,000 note, security agreement, and mortgage.  So he is charging me $23,000 plus the value of more property he took in July, for a failed appeal, and a second appeal that was improperly perfected, with no brief filed.  On top of this, now 6 months after he withdrew from the appeal, Mr. DePerno suddenly fabricates a claim of an additional $33,826.28 owed to him of which I am only learning about through a claim he filed in my bankruptcy.  Mr. Deperno's fabricated alleged "Account Statement" for $33,826.28 fails to provide credits for payments made to him, provides invoicing dates in August, September, October 2018 before I ever retained him to represent in February 2019, indicates cash payments
when no cash payments were made and violates my rights under the Fair Debt Collection Practices Act (FDCPA).
   **MRPC 1.8(j)** obtained a proprietary interest in the subject matter of the litigation.  I was trying to protect my property and prevent it being taken to satisfy a wrongful judgment.  Mr. DePerno coerced me into signing a security agreement and mortgage incumbering my property, and suggested a way to hide it from Appellees.
   **MRPC 3.3(a)(1)** making a false statement of fact to a tribunal.  Mr. DePerno falsely represented to the Court of Appeals that all transcripts had been filed with the trial court; that he personally served me with his motion to withdraw; and that I asked him to do something unethical.

Deperno COA history of excessive billing + assault battery + legal malpractice

From: **Christine Skandis** <skandis@umich.edu>
Date: Fri, Mar 13, 2020 at 11:11 AM
Subject: COA - Deperno - history of excessive billing
To: John Potter <jpotter@twoheylaw.com>

Moffits V Matthew S Deperno, LC No. 2015-000175-CZ (Kalamazoo Circuit Court)
Matthew S Deperno V Albert W Laaksonen II, COA 328739

Court of Appeals final court opinion stating,

> "The complaint included allegations of assault and battery, intentional infliction of emotional distress, and malpractice, and it is clear to us that those allegations were obviously at issue in that case. While the Moffits may have elected not to further pursue those claims in hopes of facilitating settlement, plaintiffs' position that they were irrelevant to that case has no merit. Indeed, even if we assume that the Moffits' lawsuit against DePerno was limited solely to a fee dispute, the fact that DePerno allegedly assaulted and battered the Moffits, intentionally inflicted emotional distress on the Moffits, and committed malpractice in representing the Moffits certainly related to whether he was entitled to the $137,000 in attorney fees that he sought."

> "According to the Moffits' complaint, DePerno was retained "to resolve a tax debt to the IRS of approximately $36,000." DePerno apparently sought $137,779.38, an amount greater than the $108,000 settlement reached between the Moffits and the insurance company. After the Moffits objected to the $137,000 amount, DePerno commenced a foreclosure action against the Moffits."

> In this case, plaintiffs take issue with defendants' inclusion of a document entitled "Interoffice Memorandum" with their motion for summary disposition. This memorandum included discussions centering on DePerno's timekeeping issues with another law office. These issues included "time being entered without explanation," "billable hours being 'padded,' " "excessive" write-offs, and manipulations "of the timekeeping/bill system to maintain . . . quota hours on accounts that may not render payment."

> "The complaint included allegations of assault and battery, intentional infliction of emotional distress, and malpractice, and it is clear to us [COA] that those allegations were obviously at issue in that case. While the Moffits may have elected not to further pursue those claims in hopes of facilitating settlement, plaintiffs' position that they were irrelevant to that case has no merit. Indeed, even if we assume that the Moffits' lawsuit against DePerno was limited solely to a fee dispute, the fact that DePerno allegedly assaulted and battered the Moffits, intentionally inflicted emotional distress on the Moffits, and committed malpractice in representing the Moffits certainly related to whether he was entitled to the $137,000 in attorney fees that he sought."

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MATTHEW S. DEPERNO and DEPERNO LAW
OFFICE, PLLC,

        Plaintiffs-Appellants,

v

ALBERT W. LAAKSONEN II, SUSAN DURIAN
METZGER, and LAAKSONEN LAW OFFICES,
PC,

        Defendants-Appellees.

UNPUBLISHED
December 1, 2016

No.  328739
Kalamazoo Circuit Court
LC No.  2015-000175-CZ

---

Before: SAWYER, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs appeal as of right the circuit court's orders granting defendants' motion to set aside defaults, granting defendants' motion for summary disposition, and denying plaintiffs' motion to strike documents from the court file. We affirm.

This dispute arises out of a contentious history between Matthew S. DePerno, Albert W. Laaksonen, II, and their law offices. In 2011, Cathleen and Ronald Moffit retained DePerno and his law office to represent them in an insurance and tax dispute that resulted from a fire that destroyed their home. During the course of that representation, the Moffits' relationship with DePerno deteriorated, and the Moffits ultimately retained Laaksonen and his law office to file a lawsuit against DePerno. There were a variety of disputes between the Moffits and DePerno, but the original complaint filed by Laaksonen on the Moffits' behalf focused on a fee dispute.[1] Specifically, DePerno sought attorney fees of more than $137,000 in relation to the underlying representation, an amount the Moffits found unreasonable.[2] Several months after filing their

---

[1] The Moffits' complaint included breach of contract, debt dispute, statutory violations, and legal malpractice counts against DePerno.

[2] According to the Moffits' complaint, DePerno was retained "to resolve a tax debt to the IRS of approximately $36,000." DePerno apparently sought $137,779.38, an amount greater than the $108,000 settlement reached between the Moffits and the insurance company. After the Moffits objected to the $137,000 amount, DePerno commenced a foreclosure action against the Moffits.

original complaint, the Moffits, still represented by Laaksonen, filed an amended complaint, alleging counts of assault and battery and intentional infliction of emotional distress in addition to those counts identified above.   Eventually, the Moffits and DePerno settled.   In the memorandum of settlement filed by Laaksonen, Laaksonen indicated, in pertinent part, that he and the Moffits "acknowledge that this case was solely a fee dispute" and that the "[a]llegations made in the Complaint and Amended Complaints of malpractice, assault and battery and intentional infliction of emotional distress were asserted in part to secure a restraining order preventing a real estate foreclosure."

After settling that matter, DePerno and his law office, the plaintiffs in this matter, filed the instant lawsuit against defendants, Laaksonen and his law office, alleging claims of libel, slander, defamation, and intentional infliction of emotional distress.[3]  Plaintiffs' claims were based on their allegation that defendants "published and disseminated malicious, reckless, and outrageous falsehoods about him, including, but not limited to, falsely asserting that DePerno assaulted a client, committed malpractice, and caused his former clients to suffer emotional distress."   In essence, plaintiff claimed that, because the matter between the Moffits and DePerno was only a fee dispute, all the allegations included in the complaint or amended complaint that were not limited to the fee dispute constituted a tort.   Plaintiffs additionally alleged that defendants distributed copies of the Moffits' complaint against him to the community, which was also allegedly libelous, slanderous, defamatory, and intended to inflict emotional distress.   In response, defendants moved for summary disposition, asserting, in pertinent part, that plaintiffs' claims were barred by the judicial-proceedings privilege and the fair-reporting privilege pursuant to MCL 600.2911(3).   The circuit court eventually agreed, and plaintiffs' lawsuit was dismissed. This appeal followed.

On appeal, plaintiffs raise four distinct arguments.  First, plaintiffs claim that the circuit court erroneously granted defendants' motion to set aside a default judgment that was entered against them.  We disagree.

A circuit court's decision on a motion to set aside a default judgment is reviewed for an abuse of discretion. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). A circuit court abuses its discretion when its decision falls beyond the range of principled outcomes. *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).  A defendant who has been served with a summons and a copy of a complaint has 21 days to serve and file an answer or take other action as permitted by law.  MCR 2.108(A)(1).  When a defendant chooses to file a motion for summary disposition pursuant to MCR 2.116 in response to a complaint, the responsive pleading is not due until 21 days after that motion for summary disposition is denied. MCR 2.108(C)(1); see also *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 387; 808 NW2d 511 (2011).  If a party fails to comply with the time requirements set forth in MCR

---

[3] Plaintiffs' complaint identifies Susan Durian Metzger as a resident of Van Buren County who conducts business in Kalamazoo County.   It is unclear what her role is in this matter, and plaintiffs complaint refers only to defendants collectively with respect to the allegations at issue in this case.

-2-

2.108(A)(1), the circuit court must enter a default. MCR 2.603(A)(1). Defaults may be set aside, however, if good cause is shown, MCR 2.603(D)(1), or if they were entered based on clerical errors, MCR 2.612(A)(1); MCR 2.603(D)(3).

In this case, the circuit court apparently entered a default judgment against defendants and in favor of plaintiffs on May 18, 2015, based on defendants' failure to file a responsive pleading. However, the record reflects, and the circuit court found, that defendants' motion for summary disposition was "court stamped May 14, 2015," which was timely pursuant to MCR 2.108(A)(1). Based on the fact that defendants' motion was timely, the circuit court set aside the erroneously entered default judgment. On appeal, plaintiffs hypothesize a variety of reasons as to why the motion may have been "court stamped" May 14, 2015, but actually filed on May 19, 2015; however, nothing in the record supports their hypotheses. The circuit court found the date stamp to be the most persuasive indication of what day the pleading was filed, and we are equally persuaded by the date stamp. See MCR 8.119(C) (requiring that the clerk of the court "endorse on the first page of every document the date on which it is filed"); see also *People v Earls*, 485 Mich 859, 859-860; 771 NW2d 730 (2009) (providing that this Court may rely on a date stamp to determine whether a pleading was timely filed). Accordingly, the circuit court correctly granted defendants' motion to set aside the default judgment.

Second, plaintiffs claim that the circuit court erroneously denied their motion to strike improper documents from the record. Relatedly, plaintiffs claim that the circuit court also erred in failing to sanction defendants for including those improper documents with their pleadings. We disagree in both respects.

A circuit court's decision regarding a motion to strike is reviewed for an abuse of discretion. *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003). It is true that a party is not permitted to interpose a document into a case for an improper purpose. MCR 2.114(D)(3). It is equally true that discovery materials may be removed from the court file and destroyed by order of the court upon a finding that they are no longer necessary. MCR 2.316. However, files may only be destroyed 18 months after entry of judgment or dismissal of the action if there was no appeal or 91 days after appellate proceedings have concluded if there was an appeal that did not result in a remand for further proceedings. MCR 2.316(B)(3).

In this case, plaintiffs take issue with defendants' inclusion of a document entitled "Interoffice Memorandum" with their motion for summary disposition. This memorandum included discussions centering on DePerno's timekeeping issues with another law office. These issues included "time being entered without explanation," "billable hours being 'padded,' " "excessive" write-offs, and manipulations "of the timekeeping/bill system to maintain . . . quota hours on accounts that may not render payment." Plaintiffs claim that this memorandum was "privileged and confidential" because it was "related to prior litigation," but plaintiffs do not identify, and we are unaware of, any privilege that extends to this type of a memorandum. In fact, plaintiff does not contest that it was already publically available as part of an unsealed court file in another action. It is plaintiffs' position that this memorandum was included to harass and embarrass them in violation of MCR 2.114(D)(3), but, considering the fact that the Moffits' lawsuit against DePerno focused on a fee dispute, DePerno's history of billing irregularities was obviously relevant. Finally, to the extent plaintiffs claim that this memorandum should have

-3-

been struck from the record because it was inadmissible, we must first note that plaintiff did not challenge the admissibility of the document below; thus, appellate review in this regard is precluded. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). Furthermore, we are unaware of, and defendant has not cited to, any authority that requires inadmissible exhibits in the court file to be struck. Accordingly, the circuit court correctly denied plaintiffs' motion to strike improper documents and for sanctions.

Third, plaintiffs claim that the circuit court erroneously granted defendants' motion for summary disposition. Specifically, plaintiffs claim that the statements at issue in this case are not protected under the judicial-proceedings or fair-reporting privileges. We disagree.

A circuit court's decision to grant or deny a motion for summary disposition pursuant to MCR 2.116(C)(8) is reviewed de novo. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). "A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). That is, "the motion tests whether the complaint states a claim as a matter of law, and the motion should be granted if no factual development could possibly justify recovery." *Id*. The existence of a privilege that immunizes defendants from liability for defamation presents a question of law that is reviewed de novo. *Northland Wheels Roller Skating Ctr, Inc v Detroit Free Press, Inc*, 213 Mich App 317, 324; 539 NW2d 774 (1995). Likewise, the interpretation of court rules and statutes present questions of law that are also reviewed de novo. *Feyz*, 475 Mich at 672.

Here, whether or not summary disposition was appropriate rests largely on whether plaintiffs could ultimately succeed in their defamation claim against defendants. The elements of defamation are "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the party of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005). "A defamatory communication is one that tends to harm the reputation of a person so as to lower him in the estimation of the community or deter others from associating or dealing with him." *American Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 702; 609 NW2d 607 (2000). Even if a communication is defamatory, however, it may be absolutely privileged; if so, there will be no remedy. *Oesterle v Wallace*, 272 Mich App 260, 264 NW2d 725 NW2d 470 (2006). "If a statement is absolutely privileged, it is not actionable even if it was false and maliciously published." *Id*.

At issue in this case are the judicial-proceedings and fair-reporting privileges. Under the judicial-proceedings privilege, "[s]tatements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried." *Oesterle*, 272 Mich App at 264. "What a litigant considers to be pertinent or relevant is given much freedom, and the privilege is liberally construed as a matter of public policy 'so that participants in judicial proceedings may have relative freedom to express themselves without fear of retaliation.' " *Lawrence v Burdi*, __ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 322041); slip op at 7, quoting *Sanders v Leeson Air Conditioning Corp*, 362 Mich 692, 695; 108 NW2d 761 (1961). Under the fair-reporting privilege, "[d]amages shall not be awarded in a libel action for the publication or broadcast of a fair and

true report of matters of public record . . . ." MCL 600.2911(3). The fair-reporting privilege applies "not only [to] the publication of public and official proceedings but also [to] the broadcast of matters of public record, of a governmental notice, announcement, written or recorded report or record generally available to the public, or act of a public body." *Northland Wheels*, 213 Mich App at 326. "[T]he statute makes it clear that [a] defendant's motivation is irrelevant if a fair and true report is made of the proceeding." *Stablein v Schuster*, 183 Mich App 477, 482; 455 NW2d 315 (1990); see also See also *Bedford v Witte*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket Nos. 327372, 327373); slip op at 5 (holding "that the plain language of [MCL 600.2911(3)] of the statute simply does not provide an exception for cases involving malice (however plaintiffs try to define it) or self-reporting.").

Applying those rules to the facts of this case, we conclude that the circuit court was correct in holding that the assault and battery, intentional infliction of emotional distress, and malpractice allegations made by Laaksonen on behalf of the Moffits in the amended complaint were protected by the judicial-proceedings privilege. Plaintiffs' claim that these allegations were irrelevant because Laaksonen acknowledged that the Moffits' lawsuit against DePerno "was solely a fee dispute" is without merit. Stated simply, the settlement memorandum has no bearing on what was or was not relevant to the issues identified in the Moffits' complaint. The complaint included allegations of assault and battery, intentional infliction of emotional distress, and malpractice, and it is clear to us that those allegations were obviously at issue in that case. While the Moffits may have elected not to further pursue those claims in hopes of facilitating settlement, plaintiffs' position that they were irrelevant to that case has no merit. Indeed, even if we assume that the Moffits' lawsuit against DePerno was limited solely to a fee dispute, the fact that DePerno allegedly assaulted and battered the Moffits, intentionally inflicted emotional distress on the Moffits, and committed malpractice in representing the Moffits certainly related to whether he was entitled to the $137,000 in attorney fees that he sought. Accordingly, the circuit court correctly concluded that the allegations at issue in the amended complaint were protected under the judicial-proceedings privilege.

Similarly, we also conclude that the circuit court was correct in holding that any circulation of defendants' amended complaint against plaintiffs to the community were protected under the fair-reporting privilege. There is no allegation that the complaint was altered in any manner before it was allegedly circulated to the community, and it is undisputed that the complaint was a matter of public record available for public review. MCR 8.119(H); see also *Sawabini v Desenberg*, 143 Mich App 373, 385; 372 NW2d 559 (1985). Thus, it cannot be disputed that defendants' circulation of the complaint to the community was the "publication or broadcast of a fair and true report of matters of public record" pursuant to MCL 600.2911(3). See also *Stablein*, 183 Mich App at 482. To the extent that defendant relies on cases interpreting previous versions of MCL 600.2911(3), see, e.g., *Park v The Detroit Free Press Co*, 72 Mich 560, 568; 40 NW 731 (1888), this Court is not compelled to follow decisions interpreting the previous and more restrictive version of MCL 600.2911(3). See *Northland Wheels*, 213 Mich App at 326. Accordingly, the circuit court correctly concluded that the circulation of the amended complaint to the community was protected under the fair-reporting privilege. See also *Bedford*, ___ Mich App at ___; slip op at 3, 5 (holding that "the publishing of an exact copy of the complaint that initiated judicial proceedings constitutes a 'fair and true' report with respect to those proceedings" regardless of whether "malice" or "self-reporting" are present).

Lastly, plaintiffs argue that the circuit court erroneously denied their motion for reconsideration. To support his argument, however, plaintiffs rely on the arguments discussed above, all of which we have rejected. Accordingly, the circuit court correctly denied plaintiffs' motion for reconsideration for the same reasons as those articulated above.

Affirmed. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.


/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

## STATE OF MICHIGAN
## IN THE COURT OF APPEALS

ELDEAN COMPANY, dba ELDEAN
SHIPYARD, a *Michigan corporation,*

        Appellee/ Plaintiff/ Counter-Defendant,

                              COA Case No.: 349218
                              LC Case No.: 18-60031-CK

v.

CHRISTINE SKANDIS
*an individual,*

        Appellant / Defendant/ Counter-Plaintiff /
        Third Party Plaintiff,

v.

WADE ELDEAN, HERB ELDEAN
*individuals,*

        Appellees/ Third Party Defendants.

| | |
|---|---|
| Mark H. Zietlow (P37022)<br>MARK H. ZIETLOW & ASSOCIATES, PLC<br>Attorneys for Eldean Company (Appellee)<br>12274 James Street<br>Holland, MI 49424<br>616-392-4100 | Christine J. Skandis<br>Pro Se (Appellant)<br>312 Hoffman Street<br>Saugatuck, MI 49453<br>269-998-9300 |

Robert J. Johnson (P42458)
Ross L. Janecyk (P78233)
HACKNEY GROVER PLLC
Attorneys for Eldean Company, Wade Eldean,
And Herb Eldean (Appellees)
3514 Rivertown Point Court, Suite B
Grandville, MI 49418
616-257-3900

## MOTION TO DISMISS APPEAL PURSUANT TO MCR 7.211(C)(2) and MCR 7.217

Appellee, Eldean Company, d/b/a Eldean Shipyard, moves to dismiss Appellant Christine

J. Skandis's ("Appellant" or "Skandis") entire appeal for the following four reasons: (1) Appellant

failed to order and file the lower court transcript for each of the orders she has claimed to appeal

as required by MCR 7.210; (2) Appellant's prior counsel filed a false statement providing that all

the transcripts for each of the orders being appealed was complete and filed with the lower court;

(3) Appellant failed to serve Appellee a copy of each transcript of the orders being appealed as

required by MCR 7.210(F); and (4) Appellant's untimely brief does not cite to specific page

references of the transcripts as required by MCR 7.212(C)(7). These issues are explained herein.

1.     Appellant filed a Claim of Appeal with this Court on June 5, 2019.

2.     Appellant's Claim of Appeal indicated that Appellant was appealing the five

following orders:

   a.  Order Granting Plaintiff's Motion for Entry of Judgment, Allowing Attorney

      Fees and Cost, and Dismissing All Remaining Claims, dated May 15, 2019;

   b.  Order Granting Plaintiff's Motion for Partial Summary Disposition, dated

      December 11, 2018;

   c.  Order Granting Plaintiff's Motion to Dissolve Preliminary Injunction, dated

      December 11, 2018;

   d.  Order Granting Motion for Summary Disposition, dated March 5, 2019; and

   e.  Order Granting Plaintiff's Motion for Entry of Judgment, dated April 1, 2019.

3.     With Appellant's Claim of Appeal, Skandis's attorney, Matthew DePerno

("DePerno"), filed a Statement of Transcripts Complete, in which DePerno attests that "all

transcripts for the hearings on the orders appealed have been completed and filed with the Allegan

County Circuit Court."

2

4.    MCR 7.210 requires Appellant to file transcripts for each order being appealed with the lower court.

5.    MCR 7.210(B)(1)(a) and MCR 7.210(F) require Appellant to serve a copy of each transcript for each order being appealed on Appellee.

6.    Appellee does not and at no time has had possession of the transcripts related to the five orders Appellant seeks to appeal.

7.    ~~DePerno~~ Appellant has not served Appellee with any of the transcripts related to the appeal as required by law.

8.    In an effort to retrieve the transcripts since Appellant neglected service, Appellee called the Allegan County Circuit Court on October 4, 2019.

9.    During the October 4th call with the lower court, the court indicated that only three of the relevant transcripts were on file.

10.    The lower court indicated it only had the May 15, 2019, March 5, 2019, and April 1, 2019 transcripts.

11.    Despite DePerno signing a statement that all the transcripts were filed with the lower court, the lower court does not have either of the transcripts for the December 11, 2018 hearings.

12.    Appellant has not properly filed all the required transcripts with the lower court as required. DePerno

13.    Appellant has not served a single transcript related to this appeal on Appellee.

14.    MCR 7.212(C)(7) requires that Appellant's brief provide facts that are "supported by specific page references to the transcript, the pleadings, or other document or paper filed with the trial court" and that "[p]age references to the transcript, the pleadings, or other document or

3

paper filed with the trial court must also be given to show whether the issue was preserved for appeal by appropriate objection or by other mean."

15.     Appellant does not support any of the facts asserted in her brief with page references to the relevant transcripts, pleadings, or other documents.

16.     Appellee cannot compose a reply brief that sufficiently addresses the issues and complies with court rules without a copy of the transcripts.

17.     On October 3, 2019, Appellee submitted and served on all parties a Motion to Strike Appellant's Brief as Untimely.

18.     Appellee incorporates all the same facts stated in the October 3rd motion with this motion by reference.

19.     Appellee maintains that Appellant's brief was untimely.

20.     The entire appeal should be dismissed pursuant to MCR 7.211(C)(2) for its failure to conform with this Courts rules and orders.

21.     The information discovered on October 4th serves as a new and additional basis for this Court to dismiss Appellant's entire appeal.

22.     MCR 7.217 provides that if the appellant fails to order a transcript, file a brief, or comply with court rules that Court has authority to dismiss the action.

Deperno

23.     Here, Appellant has failed to order transcripts, failed to timely file her brief, and has failed to comply with court rules.

24.     Therefore, this Court should dismiss Appellant's appeal entirely.

WHEREFORE, Appellee requests that this Court completely dismiss Appellant's appeal for her repeated failure to comply with court rules.

4

Respectfully submitted,

MARK H. ZIETLOW & ASSOCIATES, PLC

Dated: October 4, 2019

/s/ Koral C. Fritz
Koral C. Fritz (P82230)
12274 James Street
Holland, MI 49424
(616) 392-4100
koral@innovative.lawyer

5

# Exhibit 4

Matthew S. DePemo (P52622)
DEPERNO LAW OFFICE, PLLC
951 W. Milham Avenue
PO Box 1595
Portage, MI 49081
(269) 321-5064

September 16, 2019

Dear Mr. Deperno,

Please annul and void all documents regarding assets including dissolving/retracting your SEC filing, that you filed in anticipation of future legal fees - effective immediately. Provide written confirmation of this annulment by end of day September 19, 2019.

I also ask that you return all items that you took from my home at 530 West South Street Kalamazoo in July 2019. I am available to meet you at the same address on Thursday, September 19 between 3:30-5pm – for you to deliver these items intact in original condition. If this time does not work for you provide alternative dates and times by 3:30 Thursday, September 19, 2019.

Respectfully,

Christine Skandis
269-998-9300
skandis@umich.edu

Deperno refused delivery of registered mail at his stated official address



