## STATE OF MICHIGAN

## IN THE 9th CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO

MATTHEW S. DEPERNO and DEPERNO
LAW OFFICE, PLLC,

Case No. 2015-0175-CZ

    Plaintiffs,

HON. PAUL J. BRIDENSTINE
Circuit Court Judge

v

ALBERT W. LAAKSONEN, II, SUSAN
DURIAN METZGER, and LAAKSONEN
LAW OFFICES, P.C., jointly and severally,

    Defendants.

```
F I L E D
JUN 2 5 2015
9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO  MICHIGAN
```

| | |
|---|---|
| Matthew S. DePerno (P52622) | James H. Koning (P31622) |
| DEPERNO LAW OFFICE, PLLC | KONING & JILEK, P.C. |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 8175 Creekside Drive, Suite 240 | 8080 Moorsbridge Road, Suite 103 |
| Portage, MI 49024 | Portage, MI 49024 |
| (269) 321-5064 | (269) 343-1500 |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

At a session of said Court, held in the City and
County of Kalamazoo, State of Michigan,
this **25** day of **JUNE**, 2015.

PRESENT: HONORABLE PAUL J. BRIDENSTINE, Circuit Court Judge

This matter having come before the Court on Defendants' Motion for Summary Disposition,

the Court having reviewed the briefs of the parties and having heard oral argument, and the Court

being otherwise fully advised in the premises;

IT IS HEREBY ORDERED that Defendants' Motion for Summary Disposition is

GRANTED for the reasons stated on the record.

HON. PAUL J. BRIDENSTINE, Circuit Court Judge

I hereby certify that I have compared this copy
with the original on file in this court and that it
is a correct copy of the whole of such original.
Signed and sealed:

SEP 2 1 2020

Timothy A. Snow     County Clerk
9th Judicial Circuit    Kalamazoo, Michigan

Deputy Clerk

## STATE OF MICHIGAN

### IN THE 9ᵗʰ CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO

MATTHEW S. DEPERNO and DEPERNO
LAW OFFICE, PLLC,

        Plaintiffs,

v

ALBERT W. LAAKSONEN, II, SUSAN
DURIAN METZGER, and LAAKSONEN
LAW OFFICES, P.C., jointly and severally,

        Defendants.

Case No. 2015-0175-CZ

HON. PAUL J. BRIDENSTINE
Circuit Court Judge

```
F I L E D
MAY 1 4 2015
9TH JUDICIAL CIRCUIT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN
```

| | |
|---|---|
| Matthew S. DePerno (P52622) | James H. Koning (P31622) |
| DePerno Law Office, PLLC | Koning & Jilek, P.C. |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 8175 Creekside Drive, Suite 240 | 8080 Moorsbridge Road, Suite 103 |
| Portage, MI 49024 | Portage, MI 49024 |
| (269) 321-5064 | (269) 343-1500 |

## DEFENDANTS' MOTION FOR SUMMARY DISPOSITION AND BRIEF IN SUPPORT

NOW COME Defendants, Albert W. Laaksonen II ("Laaksonen"), Susan Durian Metzger ("Metzger"), and Laaksonen Law Offices, P.C., ("the law firm"), and jointly ("Defendants") pursuant to MCR 2.116 (C)(7), (C)(8), and (C)(10), ask this Honorable Court to enter an Order granting summary disposition of Plaintiff's Complaint. In support of their Motion, Defendants state as follows:

### MOTION

1.        This motion is for summary disposition of all claims filed against the Defendants claiming libel, slander, and intentional infliction of emotional distress as a result of claims made in another, pre-existing litigation.

2.     This case originated with Matthew DePerno and DePerno Law Office, PLLC ("DePerno") agreeing to represent the interests of Ronald and Cathleen Moffit ("Moffits") in an Interpleader action filed by Auto-Owners Insurance, as it related to fire insurance proceeds held by Auto-Owners and competing claims to those proceeds by both the Moffits and the IRS. That case began in Van Buren County Circuit Court, but was removed by the IRS to the Federal District Court.

3.     The Federal lawsuit/Interpleader action with Auto-Owners ("Federal lawsuit") began in March of 2011 and concluded on or about February 20, 2014, when the Moffits were shown a check for approximately $109,000 by Attorney DePerno and presented with a bill for over $137,000.

4.     On or about February 26, 2014, DePerno began a foreclosure against his clients by advertisement against real estate owned by the Moffits, including, but not limited to, the property that the Moffits experienced the fire at, and the property that the Moffits now had as their new home.

5.     The Moffits then hired Laaksonen to file the litigation which is the underlying litigation against DePerno.

6.     Laaksonen Law Offices, P.C., through Attorney Laaksonen, filed a Complaint on behalf of the Moffits, seeking a Restraining Order against the sale of their home and other properties, challenging the validity of the mortgage, challenging the validity of the foreclosure process, and including claims of Breach of Contract, Attorney Malpractice, Assault and Battery, and Intentional Infliction of Emotional Distress.

7.     Plaintiff's Complaint was filed on March 26, 2014. The original Complaint included all claims, except for Assault and Battery and Intentional Infliction of Emotional Distress.

2

8.    Moffits' Second Amended Complaint, including the additional allegations of Assault and Battery and Intentional Infliction of Emotional Distress, was filed on or about June 12, 2014.

9.    DePerno filed this Complaint on April 24, 2015.  See, Exhibit A.

10.    DePerno alleges that Metzger and Laaksonen made defamatory statements regarding DePerno in the Complaint that was filed on behalf of the Moffits, and that they published a copy of the Moffit Complaint, containing those defamatory statements, by distributing copies of the Complaint and discussing the Complaint with members of the community.

11.    Although DePerno's factual allegations are not completely true, even if true, the claims made by Laaksonen, however, are barred by the common law judicial proceedings privilege and the statutory fair reporting privilege, and should be dismissed pursuant to MCR 2.116(C)(8) and (C)(10).

12.    There can be no genuine dispute as to the fact that the allegations in the Moffit Complaint regarding DePerno are statements made by attorneys during the course of judicial proceedings and, as such, are absolutely privileged.  Furthermore, because the Moffit Complaint is a public record, all statements contained therein are privileged pursuant to MCL 600.2911(3).

13.    Also, DePerno's claims, related to the contents of the first Complaint filed on March 26, 2014, are barred by the one (1) year defamations statute of limitations and should be dismissed to MCR 2.116(C)(7) and the allegedly defamatory statements made by Laaksonen or Metzger more than one (1) year prior to the filing of DePerno's lawsuit on April 24, 2015, cannot support a defamation claim.

14.    Even if we were to assume that the factual allegations in DePerno's Complaint are all true, which they are not, he has nevertheless failed to state an actionable claim for defamation and

3

intentional infliction of emotional distress. Defendants are therefore entitled to summary disposition on all of the claims against them based on MCR 2.116(C)(7), (C)(8), and (C)(10).

WHEREFORE, for the reasons stated above, and as supported by the Brief in Support below, Defendants respectfully request that this Honorable Court enter and Order dismissing DePerno's Complaint with prejudice.

## **BRIEF IN SUPPORT**

### I.    INTRODUCTION

Plaintiffs filed this lawsuit claiming a variety of intentional torts which stem from allegations made in a lawsuit filed in March 26, 2014. The underlying case was settled after a facilitation by way of a confidential settlement memorandum on April 24, 2015. Suit was filed in this matter while the other matter remains pending. This litigation claims libel, slander, defamation, and intentional infliction of emotional distress. All of the allegations stem from claims made in the underlying lawsuit.

It is interesting that the Plaintiffs, who requested confidentiality in the memorandum of settlement (the final agreement as yet to be agreed upon), seem free in disclosing selective terms. There is a lengthy, acrimonious history leading up to the settlement and, for background purposes, the history behind the settlement is found in defense counsel's letter to Plaintiff after the settlement before this suit was filed. That letter is attached as Exhibit B, but the historical background is, for the main part, irrelevant to this motion because the case must be dismissed based upon privilege and the statute of limitations. Also for historical purposes, a historical account of the litigation is attached as Exhibit C. Again, the historical background is, for the main part, irrelevant to this motion because the case must be dismissed based upon privilege and the statute of limitations.

4

This motion is based on MCR 2.116(C)(7), (8) and (10). Pursuant to MCR 2.116(D), this motion has been filed prior to an answer to the complaint being filed.

## II.    STANDARD OF REVIEW

Summary disposition under MCR 2.116(C)(7) is appropriate where, among other things, the claim is barred by the statue of limitations. MCR 2.116(C)(7). Although not a requirement, "[a] party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. *Maiden v Rozwood*, 461 Mich 109, 119 (1999). The court must accept the plaintiff's well-pleaded allegations as true, expect those contradicted by documentary evidence. *Oliver v Smith*, 290 Mich App 678, 683 (2010).

"If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate." *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687 (2008). The grounds for a motion brought pursuant to MCR 2.116(C)(7) must be raised in a party's responsive pleadings, unless the grounds are stated in a motion filed prior to the party's first responsive pleadings. MCR 2.116(D)(2). Any response to the motion must be filed and served at least seven days before the hearing. MCR 2.116(G)(1)(a)(ii).

Summary disposition under MCR 2.116(C)(8) is appropriate where the opposing party has failed to state a claim on which relief can be granted. MCR 2.116(C)(8). Such claims must be so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Wade v Department of Corrections*, 439 Mich 158, 163 (1992). In presenting a motion for summary disposition under MCR 2.116(C)(8), the moving party may not rely on affidavits, depositions, admissions, or other documentary evidence to support or oppose the grounds asserted in the motion.

5

MCR 2.116(G)(2). Only the pleadings may be considered, and the Court will accept as true all well-pleaded facts. MCR 2.116(G)(5); *Radtke v Everett*, 442 Mich 368, 373 (1993), quoting *Abel v Eli Lilly & Co*, 418 Mich 311, 324 (1984). Only if the allegations fail to state a legal claim is summary disposition pursuant to MCR 2.116(C)(8) valid. *Radtke*, 442 Mich at 373-74.

Summary disposition under MCR 2.116(C)(10) is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. "A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim." *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713, 720 (2001), citing *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 485 (1993). In reviewing the motion, the court considers the evidence in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence to establish that the essential elements of the claim at issue are satisfied. *Quinto v Cross and Peters Co*, 451 Mich 358, 362 (1996), quoting *Celotex Corp v Catrell*, 477 US 317, 331 (1986); *Neubacher v Globe Furniture Rentals*, 205 Mich App 418, 420 (1994).

The burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Id.* The nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *McCart v J. Walter Thompson*, 437 Mich 109, 115 (1991). Conclusory statements are insufficient to create a genuine issue of fact. *Rose v Nat'l Auction Group*, 466 Mich 453, 470 (2002).

6

If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted if judgement is appropriate. *Smith v Globe Life Ins Co,* 460 Mich 446, 454-55 (1999); *McCormic v Auto Club Ins Ass'n,* 202 Mich App 233, 237 (1993); MCR 2.116(G)(4).

## III.    ANALYSIS

### A.    Judicial Proceedings Privilege

"An absolutely privileged communication is one for which no remedy is provided for damages in a defamation action because of the occasion on which the communication is made." *Couch v Schultz,* 193 Mich App 292, 294 (1992). "Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried," *Oesterle v Wallace,* 272 Mich App 260, 264 (2006), and this applies regardless of the falsity or malice on the part of the author. *Maiden,* 461 Mich at 134; *Sanders v Leeson Air Conditioning Corp,* 362 Mich 692, 695 (1961). Judicial proceedings include anything that might be said in relation to the matter at issue, including pleadings and affidavits. *Id. at* 265. "The initial determination of whether a privilege exists is one of law for the court." *Hall v Pizza Hut of America, Inc,* 153 Mich App 609, 619 (1986). If the statements at issue are protected by an absolute privilege, then the plaintiff has failed to state a claim. *Couch,* 193 Mich App at 293.

It cannot be disputed that Defendants' statements about Plaintiff Matthew DePerno at issue in this lawsuit were all made in Defendants' pleadings in the Van Buren County Circuit Court. Therefore, it is a question of law for this Court to determine whether those statements enjoy absolute privilege and are protected from a defamation claim. *Hall,* 153 Mich App at 619. As stated,

7

"[s]tatements made by [...] attorneys [...] during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried," *Oesterle,* 272 Mich App at 264, and are not slanderous expressions against counsel or parties, which have no relation to or bearing upon the issue or subject matter before the court. *Timmis,* 352 Mich at 365.

Plaintiffs' Complaint (Exhibit A) clearly states that the complained of statements were all found in the complaints filed by the Defendants in the underlying action. Plaintiffs further allege that the Defendants disseminated the complaint to others or told other lawyers about the allegations. The complaint speaks for itself. While the Defendants would deny remaining allegations as alleged, *even if those allegations were true,* judicial proceedings include anything that might be said in relation to the matter at issue, including pleadings and affidavits. *Sanders v Leeson Air Conditioning Corp,* 362 Mich 692, 695 (1961) at 265.

Upon reviewing the set of statements which Plaintiffs assert are defamatory, it is clear that the low hurdle of "relevant" *(Oesterle,* 272 Mich App at 264) is satisfied to entitle these statements to absolute privilege from defamation claims. *Couch,* 193 Mich App at 294. As our courts have articulated, so long as the statements are relevant to the claims asserted, it is immaterial whether those statements made were false or made with malice. *Maiden,* 461 Mich at 134; *Sanders,* 362 Mich at 695. As such, the statements made by Defendants in their circuit court pleadings are indeed related to the specific claims they are asserting. However, whether their circuit court claims are meritorious is another matter entirely, an evaluation of which this Court should not engage in.

**B.    The Statutory Privilege**

Allegations against the Defendants also implicate the fair reporting privilege contained in MCL 600.2911(3), which states in pertinent part (with emphasis added):

8

> **Damages shall not be awarded in a libel action for the publication or broadcast of a fair and true report of matters of public record,** a public and official proceeding, or of a governmental notice, announcement, written or recorded report or record generally available to the public, or act or action of a public body, or for a heading of the report which is a fair and true headnote of the report.

See, *Northland Wheels Roller Skating Center, Inc. v Detroit Free Press, Inc.*, 213 Mich App 317, 323-324 (1995) (recognizing, pursuant to the 1988 amendment to MCL 600.2911(3), the expansion of the fair reporting privilege); *Kefgen v Davidson*, 241 Mich App 611, 623 n 7 (2000) (stating that MCL 600.2911(3) provides a fair reporting privilege for public documents).

The Court of Appeals has held that the fair reporting privilege will protect an individual who, as here, publishes public documents. In *Deutsch v Berliner*, unpublished opinion per curiam of the Court of Appeals, decided August 24, 2004 (Docket No. 246991) (attached as Exhibit D), the plaintiff brought a defamation action based on the defendant's republication of allegedly defamatory statements through an e-mail attachment of an item contained in a Missouri court record. The Court, however, found for the defendant, holding that "the document was a record generally available to the public, and damages could not be awarded under *MCL 600.2911(3)*." *Id.*

Here, there is no dispute that the circuit court complaint is "part of a permanent public record that is available for anyone to see." Thus, Plaintiffs' protestations that the Defendants filed the lawsuit and disseminated copies is immaterial. "There is no exception in the statute that would allow plaintiff to defeat the [fair reporting] privilege." See, *Deutsch, supra*.

## C.    Statute of Limitations

Under Michigan law, the statue of limitations mandates that a claim of libel or slander must be brought within one year. MCL 600.5805(9). The original complaint in the underlying case was filed on March 26, 2014. The second amended complaint was filed on or about June 12, 2014. The

9

only new allegation in that amendment was for battery and assault and intentional infliction of emotional distress. Suit was filed in this case on April 24, 2015. Thus, the one year statute of limitation passed for all claims with a one year statute of limitations except for those contained in the second amended complaint - intentional infliction of emotional distress and assault and battery - filed on or about June 12, 2014.

## IV.    SUMMARY

The practice of law includes some "big picture" rules which anger or offend lawyers at times. This writer hates the rules that protect the peer review committee reviews in medical malpractice cases, but recognizes that there is a big picture (would hospitals police bad results/potential malpractice if their review were to be made admissible?). Here, there is a big picture also. While the squirting match between these lawyers might make them both wish for their day in court, the law recognizes a bigger picture.

The writer acknowledges the opinion of Kent County Circuit Judge Mark Trusock who recently dismissed a virtually identical case (albeit even more acrimonious). Much of this brief was pilfered.

Respectfully submitted,

KONING & JILEK, P.C.

Dated: May 14, 2015

James H. Koning (P31622)
Attorney for Defendants

10

# EXHIBIT A

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO

MATTHEW S. DePERNO and DePERNO
LAW OFFICE, PLLC

    Plaintiffs,

Case No. _2015-0175_____-CZ

v.

ALBERT W. LAAKSONEN, II, SUSAN
DURIAN METZGER, and LAAKSONEN
LAW OFFICES, PC, jointly and severally

HON. _____Paul J. Bridenstine_____

    Defendants,

---

Matthew S. DePerno (P52622)
DEPERNO LAW OFFICE, PLLC
Attorney for Plaintiff
8175 Creekside Drive, Suite 240
Portage, MI 49024
269-321-5064
269-321-5164 (facsimile)

---

## COMPLAINT

NOW COME Plaintiffs, MATTHEW S. DePERNO and DePERNO LAW OFFICE<
PLLC ("Plaintiffs"), by and through their attorney, DePERNO LAW OFFICE, PLLC, and for
their Complaint against ALBERT W. LAAKSONEN, II, SUSAN DURIAN METZGER, and
LAAKSONEN LAW OFFICES, PC, jointly and severally, (collectively "Defendants") state and
allege as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff, MATTHEW S. DePERNO, is an individual currently residing in
Kalamazoo County, Michigan.

2.    Plaintiff, DePERNO LAW OFFICE, PLLC, is a professional liability company
formed under the laws of the State of Michigan; is a business wholly owned and operated by

Plaintiff, Matthew S. DePerno ("DePerno"); and is currently located at 8175 Creekside Drive, Suite 240, Portage, MI 49024; and which regularly conducts business in Kalamazoo County

3.      Upon information and belief, Defendant ALBERT W. LAAKSONEN, II, is an individual currently residing in Kalamazoo County, and who regularly conduct's business in Kalamazoo County.

4.      Upon information and belief, Defendant SUSAN DURIAN METZGER, is an individual currently residing in Van Buren County, and who regularly conduct's business in Kalamazoo County.

5.      Upon information and belief, Defendant, LAAKSONEN LAW OFFICES, PC is a professional corporation formed under the laws of the State of Michigan; is a business wholly owned and operated by Defendant, Albert W. Laaksonen, II; and is currently located at 226 ½ E Michigan Avenue, Paw Paw, MI 49079; and which regularly conducts business in Kalamazoo County.

6.      Jurisdiction and venue are proper in this Court because the parties reside and conduct business in Kalamazoo County, Michigan.

7.      The amount in controversy exceeds $25,000.00.

## COUNT I

### LIBEL, SLANDER, DEFAMATION, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

8.      Plaintiffs restate and incorporate as if set forth fully herein all preceding allegations contained in this Complaint.

9.      DePerno is an attorney in private practice in Portage, Michigan.

10.     DePerno Law Office is a business organized on November 2, 2005.

2

11.     During his career as an attorney, Plaintiffs have enjoyed a successful law practice and an excellent reputation – until the Defendants targeted Plaintiffs and published and disseminated malicious, reckless, and outrageous falsehoods about him, including, but not limited to, falsely asserting that DePerno assaulted a client, committed malpractice, and caused his former clients to suffer emotional distress. These statements were published in a lawsuit filed June 12, 2014 in Van Buren County, and then routinely disseminated by Defendants (the "Lawsuit").

12.     Defendants' defamatory statements about Plaintiffs were gratuitously included in the Lawsuit they filed for no purpose other than to embarrass, humiliate, harm Plaintiffs, and invoke Plaintiffs' legal malpractice insurance policy in order to recover a settlement. Defendants have now acknowledged that the lawsuit was solely a fee dispute and that the defamatory statements were included in the Lawsuit in order to secure a restraining order preventing a real estate foreclosure. Exhibit 1. These defamatory statements were not relevant, material, or pertinent to the fee dispute issue to be tried in the lawsuit but were asserted for an improper purpose.

13.     Defendants have acknowledged that they have never handled a "malpractice" claim in the past. They were not competent or experience to handle such a claim. Instead, they practice family law and represent drunk drivers. Nowhere on their website do they promote "malpractice" as an area of practice. Exhibit 2.

14.     The Defendants, presumably because of a desire for self-promotion, publicity, and/or money decided to pursue this Lawsuit and filed a complaint with salacious and scandalous allegations that DePerno had assaulted a client, and that Plaintiffs committed malpractice and

3

caused his former clients to suffer emotional distress, even though they knew the case was solely about a fee dispute.

15.    Astonishingly, the Defendants have brazenly repeated their false allegations about Plaintiffs by handing out copies of the complaint that they filed that contained the defamatory statements to other people and attorneys in the community, thereby making the false statements about Plaintiffs accessible to the general public where they were available for anyone to see.

16.    The Defendants' statements accusing DePerno of assaulting a client and thus being a felon are false and defamatory, *per se*, and utter fabrications that the Defendants negligently and/or maliciously published and dispersed with knowledge that they were false or with reckless disregard for their truth or falsity.

17.    DePerno has never assaulted a client or engaged in felonious, criminal activity.

18.    Although Plaintiffs have provided Defendants with a written explanation of the falsity of Defendants' statements and made a demand for a retraction, the Defendants have refused to issue a public retraction of the false and defamatory statements. Exhibit 3.

19.    Defendants have refused to respond to the letter, despite several follow-up emails requesting a response.

20.    The Defendants have refused to publish a retraction of the false and defamatory statements.

21.    The Defendants' defamatory falsehoods have improperly sullied the reputation of an excellent attorney. As Chief Justice Warren aptly expressed it over 50 years ago: "Freedom of the press under the First Amendment does not include an absolute license to destroy lives or careers." The Defendants have intentionally defamed and damaged Plaintiffs, presumably in

4

order to create a name for themselves, generate widespread publicity for their practice, and for their own financial gain. This is unconscionable, and the Defendants should be held accountable.

22.    Plaintiffs bring this action for the purpose of at least partially preserving and restoring their good name and reputation, as well as recovering the significant damages that they have suffered.

23.    Defendants have known that dispersing copies of the lawsuit to members of the community and discussing the lawsuit would cause knowledge of the lawsuit to be broadcast to a larger audience.

24.    In particular, Defendants alleged the following in count III, titled "BATTERY and ASSAULT":

(61)    When Mr. and Mrs. Moffit expressed confusion, concern and eventually outrage at the size of DePerno Law Office PLLC's bill as presented to them on February 20, 2014, Mr. DePerno physically grabbed Mr. Moffit by the shirt and informed him that if he does not immediately pay the attorney fees owed that Mr. and Mrs. Moffit would lose their home in a matter of weeks.

(62)    That Mr. Moffit as a result of this offensive unwanted contact suffered mental anguish, fright, shock, outrage, indignity, and uncertainty.

(63)    That Mrs. Moffit witnessed the offensive grabbing of her husband and was told by Mr. Deperno to leave the reoom as this was between him and her husband.

(64)    That Mrs. Moffit as a result of witnessing this offensive unwanted contact was in fear for both her husband's and her own safety and thereby suffered mental anguish, fright, shock, outrage, indignity, and uncertainty.

(65)    The fact that Mr. Deperno was the attorney the Moffits hired to protect them and someone in whom they put their trust, only served to intensify mental anguish, fright, shock, indignity and uncertainty.

5

25.    In particular, Defendants alleged the following in count VI, titled "INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS":

(84)    The following are examples of DePerno's extreme and outrageous conduct that was either intent [sic] or reckless;

(a)    Filing unauthorized Counter-Complaint as more fully alleged above,

(b)    Not regularly billing clients as provided in the Retainer Agreement,

(d)[sic] Providing a bill of $137,000.00 and demanding immediate payment without giving the client an opportunity to review the bill;

(e)    Including in the bill thousands of dollars for Defendants' own fight with a form law firm over the possession of the client's file,

(f)    Physically grabbing Mr. Moffit in Mr. DePerno's office when Mr. Moffit would not sign over checks represting $110,000.00 of Plaintiffs' money;

(g)    Demanding the execution of a Mortgage against Plaintiffs' property while in the midst of litigation and threatening to not speak on Plaintiffs' behalf at an upcoming hearing unless the mortgage/security agreements were signed.

(h)    Threatening upon presentation of the $137,000.00 bill that if Plaintiffs did not immediately pay the bill that he would take Plaintiffs' home in a matter of weeks;

(i)    Initiating foreclosure actions five/six days after presenting the $137,000.00 bill;

(j)    Failing to give Plaintiffs an opportunity to review the bill/contest the bill/prepare to pay the bill before instituting foreclosure actions;

(k)    Using the foreclosure by advertisement process to avoid any judicial oversight of Defendants' actions;

(l)    Advertising for sale to the foreclosure by advertisement process all of the parcels identified in the Mortgage Agreement when all parcels were not necessary to fulfill the underlying debt in violation of the foreclosure by advertisement statute as alleged earlier in this Complaint.

6

(m)    Committing all of the above actions while acting as their retained counsel.

(n)    All other acts of Defendant as earlier alleged in this document.

26.    These "earlier alleged" statements include allegations that Plaintiffs engaged in unethical and fraudulent actions by illegally threatening and illegally foreclosing on the clients' property.

27.    The defamatory statements set forth above and in the Lawsuit are false.

28.    The publication and distribution of the Lawsuit were not privileged.

29.    The Lawsuit was written by Defendants without conducting any investigation into the facts or certainty of the allegations.

30.    At the time Defendants filed the Lawsuit and subsequently distributed it, they were aware that no assault and battery had occurred. The clients never made any complaint to law enforcement. They never complained to anyone at Plaintiffs office on the day of the alleged incident. They have no evidence to support their claim. In response to discovery requests, they have never produced any document that supported these unfounded, scurrilous, and defamatory claims.

31.    At the time Defendants filed the Lawsuit and subsequently distributed it, they were aware that there was no intentional infliction of emotional distress. The clients never sought treatment with a doctor and have no evidence to support their claim. They never complained to anyone at Plaintiffs' office on the day of the alleged incident. In response to discovery requests, they never produced any document that supported these unfounded, scurrilous, and defamatory claims.

32.    At the time Defendants filed the Lawsuit and subsequently distributed it, they were aware that the case was simply a fee dispute and had nothing to do with "malpractice."

7

33.    As revealed in <u>Exhibit 1</u>, Defendants have acknowledged that the case was simply a fee dispute. The allegations of assault and battery, intentional infliction of emotional distress, and malpractice were alleged as a means to involve an insurance policy and stop a foreclosure.

34.    The publication and distribution of the Lawsuit by Defendants was presumably done for the purpose of enhancing their own marketing and self-promotion, was not privileged, and was an attempt to "break into" a new area of practice for their own financial gain.

35.    The defamatory statements in the Lawsuit that were published and distributed are defamation *per se*.

36.    The Defendants negligently and/or maliciously published and distributed the defamatory statements about Plaintiffs with actual knowledge of the falsity of the statements or with reckless disregard for their truth or falsity.

37.    The defamatory statements hold Plaintiffs up to hatred, scorn, contempt, and/or ridicule, and were made with malicious intent.

38.    The false and defamatory statements by the Defendants are naturally and obviously damaging to Plaintiffs' reputation and have damaged their reputation.

39.    In addition to impairing Plaintiffs' reputation and causing DePerno lost standing in the community, the false and defamatory statements have caused DePerno to suffer personal humiliation, mortification, embarrassment, mental anguish, and emotional distress.

40.    Though utterly false, the false and defamatory statements have created suspicion that DePerno is a criminal, capable of felonious assault and other unethical conduct.

41.    Such statements will or could impact DePerno's name and the value of his name by creating the false impression that he is a criminal, capable of felonious assault and other unethical conduct.

8

42.    Such statements have also resulted in potential economic loss and other damages that are still being determined.

43.    DePerno has incurred some incremental or increased injury to feelings attributable to his sense of indignation and outrage as a result of the Defendants' bad faith and ill will.

44.    Plaintiffs are entitled to exemplary and punitive damages

WHEREFORE, Plaintiffs requests that this Court enter judgment in their favor and against Defendants in an amount to exceed $25,000.00 for the injuries sustained plus additional damages as may be proven to compensate them for losses and damages demanded in this Complaint, plus exemplary and punitive damages, together with interest, costs, and actual attorney's fees incurred in maintaining this matter, and for such further relief as the Court deems appropriate.

Respectfully submitted,

DePERNO LAW OFFICE, PLLC

DATED: April 24, 2015          By: _____

Matthew S. DePerno (P52622)
Attorney for Plaintiffs

9

# EXHIBIT B



**KONING & JILEK, P.C.**
*Attorneys and Counselors*
**8080 Moorsbridge Road, Suite 103**
**Portage, Michigan 49024**

PHONE  (269) 343-1500
FACSIMILE (269) 492-9320

JAMES H. KONING*
jkoning@koningjilek.com

SUSAN C. COLLINS, Paralegal
susan@koningjilek.com

*Also admitted to practice in Illinois

April 23, 2015

Matthew S. DePerno
DePerno Law Office, PLLC
8175 Creekside Drive, Suite 240
Portage, MI 49024

  **Re: Moffit v DePerno**

Dear Mr. DePerno:

  I have been retained by the individuals to whom you directed your April 11, 2015 letter. First, I find it rather curious that you have apparently negotiated a confidential settlement yet the assumption left by me is that you intend to broadcast those terms.

  It is important to accurately set forth the history in this matter. Attorney Laaksonen believed, and remains of the belief, that all of his allegations were well founded and true. The fact that summary disposition was denied on your attempt to dismiss malpractice claims as well as your insurance company's contribution to a settlement belies any interpretation otherwise. It is true that by the end of the litigation, the case was about attorney fees. The reason for that is not a change of heart, but the fact that you were able to reduce the effects of the claimed malpractice by billing the clients for excessive services rendered which would not have been necessary, absent the claimed malpractice.

  Furthermore, while it is true that certain allegations were made for tactical reasons, that does not mean that the allegations were unsubstantiated or untrue.

  There seems to be a major disconnect between your assumptions regarding Mr. Laaksonen's "acknowledgment" and the history of what occurred. Mr. Laaksonen inquired and was specifically told by your attorney as well as the facilitator that the sole reason you wanted the acknowledgment was to assist you in obtaining future malpractice coverage. In fact, your attorney offered to include language which would refute any ulterior motives on your part and we have that offer in writing. My client deemed it unnecessary as he assumed good faith. Additionally, I know the facilitator



K&J

April 23, 2015
Page 2

Timothy Sheridan well as I have litigated cases against him. He is a man of honor and I am positive that as a case evaluator/mediator/facilitator, he would not induce Attorney Laaksonen to include language if he felt it was a trap. Your attorney's e-mail confirming the willingness to add court rule language which would directly alleviate him from complicity in any fraud speaks for itself. In short, both your attorney and the facilitator assured Mr. Laaksonen that the reason for the acknowledgment was to assist you in getting future insurance coverage.

The bottom line, Matt, is that there needs to come an end to all squirting matches. Attorney Laaksonen was lead to believe that the settlement was the end. Your letter, however, leaves the impression that you had and have other motives.

In an attempt to accommodate your stated need to obtain future malpractice coverage, Attorney Laaksonen agreed to the requested language. His suggestion as to modifications to the agreement which again restates that acknowledgment shows his good faith. The agreement calls for a standard release which would not include this acknowledgment and would not be signed by attorneys, but rather the parties.

My very strong suggestion is that you agree to Attorney Laaksonen's willingness to include the added language to your counsel's release or sign the release which I have drafted.

This was an emotional case and I understand the emotion. It is time to put this matter to bed. If you choose not to do so, however, please recognize that once you pull a gun, it is fairly difficult to put it back in the holster without being shot at.

Very truly yours,

KONING & JILEK, P.C.

James H. Koning

JHK/sc
Enc.



# EXHIBIT C

Ron and Cathleen Moffit ("Moffits") first met Matthew DePerno in 2005, when he was working for Kreis, Enderle, Callander and Hudgins, P.C.  When the Moffits went to Mr. DePerno again in 2011, they did not know that he had been terminated from Kreis, Enderle amidst allegations that he had padded his billings as it related to both the law firm and as it related to clients.  See attached KECH Confidential Interoffice Memorandum, dated October 12, 2005, as attached to pleadings, dated July 2, 2007, in Kalamazoo County Circuit Court Case No. B06-0283-CZ.

From the time that they hired Mr. DePerno ("DePerno") in June of 2011 until early 2013, he worked for/with Veritas Law Group.  During the course of DePerno's separation from Veritas Law Group in 2013, Matthew DePerno requested an adjournment at the Final Pre-Trial Conference on June 6, 2013, claiming that Veritas Law Group was refusing to turn over the Moffits' file as a direct result of billing disputes related to his separation from Veritas Law Group.  As a direct result of DePerno's claims in his Motion to the Federal District Court Judge, the Federal District Court Judge ordered Veritas Law Group and DePerno to be present at a show cause hearing on June 12, 2013, in order to show cause why the Moffits' case should not be released to DePerno.  The Federal District Court Judge then had his staff send a hard copy of the order by certified mail to the Moffits in order to be sure that the Moffits were informed of what was taking place.  DePerno had his malpractice carrier present at the time of that hearing and told the Moffits to file a claim against his malpractice carrier for reimbursement of the costs (estimated by DePerno at $20,000) that DePerno would have to incur on the Moffits' behalf to retrieve and re-assemble the Moffits' file.  Why the Moffits would be billed for this in the first place remained a mystery.

### Interpleader Action

In December of 2010, the Moffits' home burned and an insurance claim was filed with Auto-Owners Insurance.  During the processing of the claim, it was discovered that the land on

which the Moffits built their home was in fact owned by an LLC belonging to the Moffits son-in-law. Only the insurance policy itself was in the Moffits' name. Despite the irregularity, the insurance company decided to pay the claim and paid approximately $250,000 for the Moffits' home, but withholding $80,000 due to an IRS lien. Auto-Owners Insurance filed an Interpleader action in the Van Buren County Circuit Court, naming the Moffits, A&P Enterprises LLC, and the IRS as interested parties. The Moffits then entered into a retainer agreement with Attorney DePerno for the express purpose of filing an Answer to the Interpleader action and filing a Counter-Complaint for Reformation of Contract. This was memorialized in the June 8, 2011 Fee Agreement with DePerno. The IRS removed the Van Buren County action to Federal District Court. DePerno, on behalf of the Moffits, filed an answer to the Interpleader action, a Counter-Complaint for Reformation of Contract, *and a Counter-Complaint for Breach of Contract claiming that Auto-Owners Insurance had failed to pay as required under the insurance contract.* The Moffits claimed in their lawsuit against DePerno that he was not to have filed a Counter-Complaint for Breach of Contract. In response to the unauthorized Breach of Contract allegations, Auto-Owners Insurance retaliated and the litigation exploded. Auto-Owners amended its Complaint asking for rescission of the insurance contract, stopped payment on $123,000 in checks, and demanded return of proceeds earlier provided for the loss of their home. In other words, Moffits claimed that DePerno went far beyond the authorized issue of the IRS lien and caused the litigation to explode.

In September, 2013, after approximately two (2) hours of trial, the Federal Court Judge ruled in favor of the Moffits on the insurance-related claims and essentially restored to Moffits the monies they would have received, but for the stop payment of the checks.

2

Prior to the Trial, on March 4, 2013, DePerno had the Moffits execute a new Fee Agreement, including a Mortgage against all real estate in the Moffits' or A&P Enterprises LLC's name, together with a UCC lien. At the time of the execution of this new Fee Agreement and Mortgage, DePerno cited the current attorney fees as $53,000. See attached March 4, 2013 Fee Agreement, Promissory Note and Mortgage. The Moffits, in their suit against DePerno, alleged that the new agreements were executed shortly before Motions for Summary Disposition were to be argued and that the Moffits did not want to sign a new agreement or give a mortgage under the terms provided by DePerno. The Moffits further claimed that DePerno refused to speak on their behalf at the upcoming Motion for Summary Disposition if they were not willing to sign his Mortgage Agreement.

Following the Judge's ruling at trial, the Moffits then settled with the IRS, releasing to the IRS the full amount of its lien in exchange for a Waiver of any additional balance that had accrued since the filing of the lien.

In February of 2014, DePerno contacted the Moffits, informing them that he had received a check and asking them to come to his office to execute documents in order to receive the check. When the Moffits met with DePerno on or about February 20, 2014, DePerno showed them a check from Auto-Owners for approximately $109,000 and presented the Moffits with his bill for over $137,000. The Moffits attempted to talk to DePerno about the bill, but DePerno indicated that he would not discuss this bill with them until they had signed over the full amount of approximate $109,000 check to him.

3

Approximately six (6) days later on February 26, 2014, DePerno began foreclosure by advertisement of all of the Moffits' and A&P Enterprises LLC's properties held by the Mortgage. See attached Notice of Foreclosure.

### Moffit Complaint Against DePerno

The Moffits met with and retained the services of Attorney Laaksonen in March of 2014. Attorney Laaksonen requested in writing on several occasions that DePerno adjourn the Sheriff's Sale of the Moffits' real estate so that an attempt could be made to discuss the Moffits' numerous concerns as it related to DePerno's claim for attorney fees.

DePerno responded by indicating that his fees were now $141,000 and that he would not accept anything less than payment in full. On March 26, 2014, on the day before the sale was scheduled to take place, the Moffits, through Attorney Laaksonen, filed a Complaint, together with a request for a Petition for Temporary Restraining Order. A Temporary Restraining Order was granted at 6:30 p.m. on March 26, 2014, to stop the sale scheduled for 1:00 p.m. on March 27, 2014.

On May 15, 2014, Ronald Moffit executed an Affidavit in support of responses to DePerno's Motion for Summary Disposition. See attached Affidavit. On June 12, 2014, the Moffits through Attorney Laaksonen filed an Amended Complaint, adding additional counts for Battery and Assault, and Intentional Infliction of Emotional Distress. See attached Second Amended Complaint.

On March 24, 2015, during facilitative mediation, the parties settled the "Moffits" litigation against "DePerno". The parties executed a Memorandum of Settlement Agreement, which required that in addition to the agreed upon terms, the parties would execute a Standard Release of Confidentiality and Non-disparagement provisions. That agreement has not been finalized and Attorney Laaksonen has scheduled a motion to settle the language in that agreement for May 27, 2015.

4